Nos. 22-16810, 22-16812

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CITY OF OAKLAND, et al.,

*Plaintiffs-Appellees*,

v.

B.P. P.L.C., et al.

*Defendants-Appellants.*

On Appeal from the United States District Court, Northern District of California,
Case No. 3:17-cv-06011 (The Honorable William H. Alsup)

CITY AND COUNTY OF SAN FRANCISCO, et al.,

*Plaintiffs-Appellees*,

v.

B.P. P.L.C., et. al.

*Defendants-Appellants.*

On Appeal from the United States District Court, Northern District of California,
Case No. 3:17-cv-06012 (The Honorable William H. Alsup)

## PLAINTIFFS-APPELLEES' CONSOLIDATED ANSWERING BRIEF

Barbara J. Parker, City Attorney
Maria Bee, Chief Assistant City Attorney
Zoe M. Savitsky, Supervising Deputy City Attorney
Oakland Office of the City Attorney
One Frank Ogawa Plaza, 6th Floor
Oakland, CA 94612
Telephone: (510) 238-3601

*Counsel for People of the State of California and City of Oakland*

David Chiu, City Attorney
Yvonne R. Meré, Chief Deputy City Attorney
Sara J. Eisenberg, Chief of Complex and Affirmative Litigation
Ronald H. Lee, Deputy City Attorney
Robb W. Kapla, Deputy City Attorney
Alexander J. Holtzman, Deputy City Attorney
San Francisco City Attorney's Office
Fox Plaza, 7th Floor, 1390 Market Street
San Francisco, CA 94102
Telephone: (415) 554-4748

*Counsel for the People of the State of California and City & County of San Francisco*

*(Additional counsel listed on signature page)*

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................1

JURISDICTIONAL STATEMENT .....................................................................5

ISSUES PRESENTED ..........................................................................................5

STATEMENT OF ADDENDUM .........................................................................6

STATEMENT OF THE CASES ...........................................................................6

   I.    The Complaints ..........................................................................................6

   II.   Removal and Federal Court Proceedings ...................................................7

SUMMARY OF ARGUMENT ..............................................................................9

ARGUMENT .......................................................................................................12

   I.    These Cases Are Not Removable Under the Federal-Officer
       Removal Statute ........................................................................................12

       A.   Defendants Improperly Rely on Evidence and Arguments
           That Far Exceed the Scope of Allegations in Their NORs. .................12

       B.   Defendants Should Be Estopped from Relitigating Their
           Federal-Officer Removal Theory. ........................................................14

       C.   Federal-Officer Jurisdiction Does Not Exist. .......................................17

           1.   Defendants Did Not Act Under Federal Officers............................19

                a.   Defendants Did Not Act Under Federal Officers by Selling
                    Fuel to the Military. ................................................................20

                b.   Defendants Did Not Act Under Federal Officers When
                    They Produced and Sold Fossil Fuels During WWII. ..............24

           2.   Defendants' Purportedly Federal Activities Share No Nexus
              with the Conduct Challenged in the People's Complaints..............27

                a.   Defendants' WWII-era Activities Long Predate the Acts
                    Challenged in the People's Complaints. ..................................28

                b.   Defendants Cannot Show that Federal Officers Directed
                    Their Climate-Deception Campaign. .......................................29

c.  The Remedies Sought by the People Do Not Create a
Nexus to Defendants' Activities. ................................................32

d.  The People's Injuries Resulting from Climate Change
Do Not Create a Nexus to Defendants' Activities. ...................35

3.  Defendants Do Not Raise Any Colorable Federal Defense. ...........39

II.  Defendants' First Amendment Defenses Do Not Change This Court's
Holding That the People's Claims Are Not Removable Under *Grable* ........42

A.  Defendants Waived Their First Amendment Theory of *Grable*
Jurisdiction. ...............................................................................43

B.  Defendants' First Amendment Theory of *Grable* Jurisdiction
Is Meritless. ..............................................................................46

**CONCLUSION** ................................................................................................**52**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agyin v. Razmzan*,
   986 F.3d 168 (2d Cir. 2021) .................................................................23

*Alvarez v. Hill*,
   518 F.3d 1152 (9th Cir. 2008) ............................................................34

*Baker v. Atl. Richfield Co.*,
   962 F.3d 937 (7th Cir. 2020) ..............................................................23

*Barrow Dev. Co. v. Fulton Ins. Co.*,
   418 F.2d 316 (9th Cir. 1969) ........................................... 10, 12, 13, 14

*Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*,
   405 F. Supp. 3d 947 (D. Colo. 2019) ............................................2, 31

*Boyle v. United Techs. Corp.*,
   487 U.S. 500 (1988) ...........................................................................41

*Bullitt Cnty. Fiscal Ct. v. Newsome*,
   60 F.3d 828, 1995 WL 408183 (6th Cir. 1995).................................47

*Cabalce v. Thomas E. Blanchard & Assocs., Inc.*,
   797 F.3d 720 (9th Cir. 2015) .................................................. 21, 25, 40

*California v. Sky Tag, Inc.*,
   No. CV 11-8638 ABC (PLAx), 2011 WL 13223655
   (C.D. Cal. Nov. 29, 2011) .............................................................. 47, 48

*Cardtoons, L.C. v. Major League Baseball Players Ass'n*,
   95 F.3d 959 (10th Cir. 1996) ..............................................................47

*Church of Scientology of Cal. v. Adams*,
   584 F.2d 893 (9th Cir. 1978) ..............................................................52

*City & Cnty. of Honolulu v. Sunoco LP*,
   Nos. 20-163, 20-470, 2021 WL 531237 (D. Haw. Feb. 12, 2021) ............. *passim*

iii

*City & Cnty. of Honolulu v. Sunoco LP*,
    39 F.4th 1101 (9th Cir. 2022) ........................................................................ *passim*

*City of Annapolis v. BP P.L.C.*,
    Nos. 21-772, 21-1323, 2022 WL 4548226 (D. Md. Sept. 29, 2022) ........... *passim*

*City of Hoboken v. Exxon Mobil Corp.*,
    558 F. Supp. 3d 191 (D.N.J. 2021) ................................................................. *passim*

*City of Hoboken v. Chevron Corp.*,
    45 F.4th 699 (3d Cir. 2022) ............................................................ 18, 45, 46, 49

*City of Modesto Redev. Agency v. Super. Ct.*,
    119 Cal. App. 4th 28 (2004) ...................................................................... 30, 32

*City of Oakland v. BP PLC*,
    969 F.3d 895 (9th Cir. 2020) ......................................................................... *passim*

*Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.*,
    996 F.3d 243 (4th Cir. 2021) ...................................................................... 36, 41

*Cnty. of San Mateo v. Chevron Corp.*,
    294 F. Supp. 3d 934 (N.D. Cal. 2018) ............................................................1, 31

*Cnty. of San Mateo v. Chevron Corp.*,
    960 F.3d 586 (9th Cir. 2020) .......................................................... 2, 13, 16, 17

*Cnty. of San Mateo v. Chevron Corp.*,
    32 F.4th 733 (9th Cir. 2022) ......................................................................... *passim*

*Cnty. of Santa Clara v. Atl. Richfield Co.*,
    137 Cal. App. 4th 292 (2006) .............................................................. 11, 30, 32

*Collins v. D.R. Horton, Inc.*,
    505 F.3d 874 (9th Cir. 2007) ...............................................................................45

*Connecticut v. Exxon Mobil Corp.*,
    No. 3:20-1555, 2021 WL 2389739 (D. Conn. June 2, 2021) ...................... *passim*

*Corona-Contreras v. Gruel*,
    857 F.3d 1025 (9th Cir. 2017) ..............................................................................45

*Delaware v. BP Am. Inc.*,
    578 F. Supp. 3d 618 (D. Del. 2022) ............................................................ *passim*

*Devengoechea v. Bolivarian Republic of Venezuela*,
    889 F.3d 1213 (11th Cir. 2018) ..............................................................37

*District of Columbia v. Exxon Mobil Corp.*,
    __ F. Supp. 3d __, 2022 WL 16901988 (D.D.C. Nov. 12, 2022) ........................2

*Empire Healthchoice Assurance, Inc. v. McVeigh*,
    547 U.S. 677 (2006) ............................................................................42

*Exxon Mobil Corp. v. United States*,
    No. H-10-2386, 2020 WL 5573048 (S.D. Tex. Sept. 16, 2020) ........................26

*Fireman's Fund Ins. Co. v. Stites*,
    258 F.3d 1016 (9th Cir. 2001) ..............................................................17

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
    141 S. Ct. 1017 (2021) .......................................................................8, 9

*Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*,
    463 U.S. 1 (1983) ............................................................................ 48, 51

*Fry v. Napoleon Community Schools*,
    580 U.S. 154 (2017) ............................................................................38

*Getz v. Boeing Co.*,
    654 F.3d 852 (9th Cir. 2011) ................................................................41

*Goncalves ex rel. Goncalves v. Rady Child.'s Hosp. San Diego*,
    865 F.3d 1237 (9th Cir. 2017) ............................................................ *passim*

*Gorran v. Atkins Nutritionals, Inc.*,
    464 F. Supp. 2d 315 (S.D.N.Y. 2006) ....................................................50

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
    545 U.S. 308 (2005) .........................................................................3, 11

*Gully v. First Nat'l Bank*,
    299 U.S. 109 (1936) ........................................................................ 50, 51

*Gunn v. Minton*,
    568 U.S. 251 (2013) ............................................................................43

*Harmston v. City & Cnty. of S.F.*,
    627 F.3d 1273 (9th Cir. 2010) ...........................................................16

*Hustler Mag., Inc. v. Falwell*,
    485 U.S. 46 (1988) ............................................................................49

*In re Cellular 101, Inc.*,
    539 F.3d 1150 (9th Cir. 2008) .................................................... 44, 45

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
    511 F. Supp. 2d 742 (S.D. Tex. 2005) ...............................................50

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
    488 F.3d 112 (2d Cir. 2007) .............................................................28

*In re Nat'l Prescription Opiate Litig.*,
    No. 1:17-md-2804, 2023 WL 166006 (N.D. Ohio Jan. 12, 2023) .......41

*Inv. Prot. Corp. v. Vigman*,
    74 F.3d 932 (9th Cir. 1996) ..............................................................43

*Isaacson v. Dow Chem. Co.*,
    517 F.3d 129 (2d Cir. 2008) .............................................................29

*Janus v. AFSCME, Council 31*,
    138 S. Ct. 2448 (2018) .....................................................................50

*Jefferson Cnty. v. Acker*,
    527 U.S. 423 (1999) ..........................................................................35

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ..........................................................52

*Lam Rsch. Corp. v. Schunk Semiconductor*,
    65 F. Supp. 3d 863 (N.D. Cal. 2014)................................................34

*Lasar v. Ford Motor Co.*,
    399 F.3d 1101 (9th Cir. 2005) ..........................................................26

*Lieberman v. Fieger*,
   338 F.3d 1076 (9th Cir. 2003) ................................................................52

*M/V Am. Queen v. San Diego Marine Constr. Corp.*,
   708 F.2d 1483 (9th Cir. 1983) ...............................................................26

*Maloney v. Scottsdale Ins. Co.*,
   256 F. App'x 29 (9th Cir. 2007) .............................................................34

*Massachusetts v. Exxon Mobil Corp.*,
   462 F. Supp. 3d 31 (D. Mass. 2020) ...................................................2, 31

*Mayor & City Council of Baltimore v. BP P.L.C.*,
   388 F. Supp. 3d 538 (D. Md. 2019) ....................................................1, 31

*Mayor & City Council of Baltimore v. BP P.L.C.*,
   31 F.4th 178 (4th Cir. 2022) ......................................................... *passim*

*Mayor & City Council of Baltimore v. BP P.L.C.*,
   141 S. Ct. 1532 (2021) ............................................................................5

*Milkovich v. Lorain J. Co.*,
   497 U.S. 1 (1990) ..................................................................................49

*Minnesota v. Am. Petroleum Inst.*,
   No. 20-1636, 2021 WL 1215656 (D. Minn. Mar. 31, 2021) ............. 2, 18, 31, 32

*Minnesota v. Am. Petroleum Inst.*,
   63 F.4th 703 (8th Cir. 2023) ....................................................... 18, 31

*Munoz v. Cnty. of Imperial*,
   667 F.2d 811 (9th Cir. 1982) ..................................................... 44, 45

*N.Y. Times Co. v. Sullivan*,
   376 U.S. 254 (1964) .................................................................... 48, 49

*Nat'l Rev., Inc. v. Mann*,
   140 S. Ct. 344 (2019) ............................................................................49

*Nevada v. Culverwell*,
   890 F. Supp. 933 (D. Nev. 1995) ..........................................................47

*Newman-Green, Inc. v. Alfonzo-Larrain*,
    490 U.S. 826 (1989) ........................................................................................13

*OBB Personenverkehr AG v. Sachs*,
    577 U.S. 27 (2015) ...........................................................................................37

*Ortiz v. Tara Materials, Inc.*,
    No. 21-CV-00373-AJB-AHG, 2021 WL 5982289 (S.D. Cal. Dec. 17, 2021) ....13

*Ortiz v. University of Medicine & Dentistry of N.J.*
    No. 08-2669 (JLL), 2009 WL 737046 (D.N.J. Mar. 18, 2009) ...........................51

*Parklane Hosiery Co. v. Shore*,
    439 U.S. 322 (1979) ........................................................................................14

*Pentax Corp. v. Myhra*,
    72 F.3d 708 (9th Cir. 1995) .............................................................................45

*People v. ConAgra Grocery Prods. Co.*,
    17 Cal. App. 5th 51 (2017) ................................................................. 11, 30, 32

*Philadelphia Newspapers, Inc. v. Hepps*,
    475 U.S. 767 (1986) ........................................................................................49

*Plaquemines v. Riverwood Prod. Co.*,
    No. 18-cv-5217, 2022 WL 101401 (E.D. La. Jan. 11, 2022) ..............................27

*Powerex Corp. v. Reliant Energy Servs., Inc.*,
    551 U.S. 224 (2007) ..........................................................................................3

*Raich v. Gonzales*,
    500 F.3d 850 (9th Cir. 2007) ...........................................................................40

*Rauner v. Am. Fed. of State, Cnty., & Mun. Emps., Council 31*,
    No. 15-C-1235, 2015 WL 2385698 (N.D. Ill. May 19, 2015) ...........................50

*Rhode Island v. Chevron Corp.*,
    393 F. Supp. 3d 142 (D.R.I. 2019) .................................................................2, 31

*Rhode Island v. Shell Oil Prods. Co.*,
    979 F.3d 50 (1st Cir. 2020) ..............................................................................31

*Rhode Island v. Chevron Corp.*,
    35 F.4th 44 (1st Cir. 2022) ........................................................................ 2, 16, 31

*Rockwell Int'l Credit Corp. v. U.S. Aircraft Ins. Grp.*,
    823 F.2d 302 (9th Cir. 1987) ................................................................. 14

*Rutherford v. Owens-Illinois, Inc.*,
    16 Cal. 4th 953 (1997) ......................................................................... 34

*San Diego Unified Port Dist. v. Monsanto Co.*,
    No. 15-CV-578-WQH-JLB, 2016 WL 5464551 (S.D. Cal. Sept. 28, 2016) ....... 30

*Sawyer v. Foster Wheeler LLC*,
    860 F.3d 249 (4th Cir. 2017) ................................................................. 36

*Schmitt v. War Emergency Pipelines*,
    175 F.2d 335 (8th Cir. 1949) ................................................................. 26

*Shell Oil Co. v. United States*,
    751 F.3d 1282 (Fed. Cir. 2014) .............................................................. 26

*Shinoff v. Larkins*,
    No. 07CV2202 WQH (WMc), 2008 WL 564728 (S.D. Cal. Mar. 3, 2008) ........ 47

*Snyder v. Phelps*,
    580 F.3d 206 (4th Cir. 2009) ................................................................. 49

*Syverson v. Int'l Bus. Machs. Corp.*,
    472 F.3d 1072 (9th Cir. 2007) ............................................................. 15, 16, 17

*Time, Inc. v. Hill*,
    385 U.S. 374 (1967) ............................................................................. 49

*Troung v. Am. Bible Soc'y*,
    171 F. App'x 898 (2d Cir. 2006) ........................................................... 47

*U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*,
    898 F.2d 914 (3d Cir. 1990) .................................................................. 50

*United States v. Arreguin*,
    735 F.3d 1168 (9th Cir. 2013) ............................................................... 45

ix

*United States v. Castillo-Basa*,
  483 F.3d 890 (9th Cir. 2007) ................................................................16

*United States v. Hooton*,
  693 F.2d 857 (9th Cir. 1982) ..................................................................5

*United States v. Shell Oil Co.*,
  294 F.3d 1045 (9th Cir. 2002) ..............................................................26

*Washington v. Monsanto Co.*,
  738 F. App'x 554 (9th Cir. 2018)..........................................................20

*Watson v. Philip Morris Cos.*,
  551 U.S. 142 (2007) ................................................................... 19, 21, 25

*Wood v. Crane Co.*,
  764 F.3d 316 (4th Cir. 2014) ................................................................13

**Statutes**

28 U.S.C. § 1291 .................................................................................5, 16

28 U.S.C. § 1331 ......................................................................................42

28 U.S.C. § 1334(b) .................................................................................50

28 U.S.C. § 1441(a) ..............................................................................6, 48

28 U.S.C. § 1442(a)(1)..........................................................................9, 18

28 U.S.C. § 1446(b)(1) .......................................................................4, 12

28 U.S.C. § 1605(a)(2)............................................................................37

28 U.S.C. § 1653 .............................................................................. 4, 5, 12

42 U.S.C. § 1983 ......................................................................................50

Cal. Civ. Code § 3479 ...............................................................................7

Cal. Civ. Code § 3480 ...............................................................................7

Cal. Civ. Code § 3491 ...............................................................................7

Cal. Civ. Code § 3494 ...............................................................................7

Cal. Civ. Proc. Code § 731 ......................................................................7

**Rules**

9th Cir. R. 3-6(a)(2) ...............................................................................5

9th Cir. R. 28-2.7 ..................................................................................6

**Other Authorities**

18A Charles Alan Wright et al., Fed. Prac. & Proc. § 4433 (3d ed. 2022)...........46

**INTRODUCTION**

The People of the State of California, by and through the San Francisco and Oakland City Attorneys ("People"), filed these two lawsuits in California state court in 2017, asserting a single public nuisance claim under California law against the five Defendants-Appellants ("Defendants"). The People seek equitable abatement to remedy the inevitable, severe local impacts of sea level rise and similar harms caused by Defendants' decades-long campaign to promote their fossil-fuel products while deceiving the public about those products' known dangers.

Three opinions of this Court (in these and two other sets of cases) have found no basis for federal subject-matter jurisdiction in nearly identical circumstances, and the First, Third, Fourth, Eighth, and Tenth Circuits all affirmed remand in analogous climate-deception cases.[1] The Supreme Court recently denied certiorari in five of them: *San Mateo*, *Honolulu*, *Boulder*, *Baltimore*, and *Rhode Island*. *See supra* n.1.

---

[1] *Cnty. of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934 (N.D. Cal. 2018) ("*San Mateo I*"), *aff'd in part, appeal dismissed in part*, 960 F.3d 586 (9th Cir. 2020) ("*San Mateo II*"), *vacated and remanded on other grounds*, No. 20-884 (U.S. May 24, 2021), *aff'd*, 32 F.4th 733 (9th Cir. 2022) ("*San Mateo III*"), *cert. denied sub nom. Chevron Corp. v. San Mateo Cnty.*, __ S. Ct. __, 2023 WL 3046226 (Apr. 24, 2023); *City of Oakland v. BP PLC*, 969 F.3d 895 (9th Cir. 2020), *cert. denied sub nom. Chevron Corp. v. City of Oakland*, 141 S. Ct. 2776 (2021); *Mayor & City Council of Baltimore v. BP P.L.C.*, 388 F. Supp. 3d 538 (D. Md. 2019) ("*Baltimore I*"), *as amended* (June 20, 2019), *aff'd in part, appeal dismissed in part*, 952 F.3d 452 (4th Cir. 2020), *vacated and remanded on other grounds*, 141 S. Ct. 1532 (2021) ("*Baltimore III*"), *aff'd*, 31 F.4th 178 (4th Cir. 2022) ("*Baltimore IV*"), *cert. denied sub nom. BP P.L.C. v. Mayor & City Council of Baltimore*, __ S. Ct. __, 2023 WL

The previous opinions of this Court in these climate-deception cases, uniformly rejecting Defendants' removal arguments, govern the outcome here. It is past time to return these cases to state court, consistent with "Congress's longstanding 'policy of not permitting interruption of the litigation of the merits of a removed case by prolonged litigation of questions of jurisdiction of the district

---

3046224 (Apr. 24, 2023); *Rhode Island v. Chevron Corp.*, 393 F. Supp. 3d 142 (D.R.I. 2019) ("*Rhode Island I*"), *aff'd sub nom. Rhode Island v. Shell Oil Prods. Co.*, 979 F.3d 50 (1st Cir. 2020) ("*Rhode Island II*"), *vacated and remanded on other grounds*, 141 S. Ct. 2666 (2021), *aff'd*, 35 F.4th 44 (1st Cir. 2022) ("*Rhode Island III*"), *cert. denied sub nom. Shell Oil Prods. Co. v. Rhode Island*, __ S. Ct. __, 2023 WL 3046229 (Apr. 24, 2023); *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 405 F. Supp. 3d 947 (D. Colo. 2019) ("*Boulder I*"), *aff'd*, 25 F.4th 1238 (10th Cir. 2022), *cert. denied sub nom. Suncor Energy, Inc. v. Bd. Comm'rs Boulder Cnty.*, __ S. Ct. __, 2023 WL 3046222 (Apr. 24, 2023); *Massachusetts v. Exxon Mobil Corp.*, 462 F. Supp. 3d 31 (D. Mass. 2020); *City & Cnty. of Honolulu v. Sunoco LP*, Nos. 20-163, 20-470, 2021 WL 531237 (D. Haw. Feb. 12, 2021) ("*Honolulu I*"), *aff'd*, 39 F.4th 1101 ("*Honolulu II*"), *cert. denied sub nom. Sunoco LP v. Honolulu*, __ S. Ct. __, 2023 WL 3046227 (Apr. 24, 2023); *Minnesota v. Am. Petroleum Inst.*, No. 20-1636, 2021 WL 1215656 (D. Minn. Mar. 31, 2021) ("*Minnesota I*"), *aff'd*, 63 F.4th 703 (8th Cir. 2023) ("*Minnesota II*"); *Connecticut v. Exxon Mobil Corp.*, No. 3:20-1555, 2021 WL 2389739 (D. Conn. June 2, 2021), *appeal filed*, No. 21-1446 (2d Cir. June 9, 2021); *City of Hoboken v. Exxon Mobil Corp.*, 558 F. Supp. 3d 191 (D.N.J. 2021) ("*Hoboken I*"), *aff'd sub nom. City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022) ("*Hoboken II*"), *cert. petition filed* (Mar. 1, 2023) (No. 22-821); *Delaware v. BP Am. Inc.*, 578 F. Supp. 3d 618 (D. Del. 2022), *aff'd sub nom. City of Hoboken*, 45 F.4th 699; *City of Annapolis v. BP P.L.C.*, Nos. 21-772, 21-1323, 2022 WL 4548226 (D. Md. Sept. 29, 2022), *appeal filed*, No. 22-2082 (4th Cir. Oct. 14, 2022); *District of Columbia v. Exxon Mobil Corp.*, __ F. Supp. 3d __, 2022 WL 16901988 (D.D.C. Nov. 12, 2022), *appeal filed*, No. 22-7163 (D.C. Cir. Nov. 30, 2022). Although Defendants refer to this Court's 2022 opinion in the *San Mateo* case, 32 F.4th 733, as *San Mateo II*, the People refer to that opinion as *San Mateo III* in light of this Court's prior 2020 opinion in that case, 960 F.3d 586.

court to which the cause is removed.'" *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 238 (2007) (citation omitted).

In the previous appeal in these cases, this Court rejected two of the removal theories Defendants now seek to "preserve," concluding that the People's claims (1) do not present a substantial federal question that would create jurisdiction under *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), and (2) are not completely preempted by federal law. *See Oakland*, 969 F.3d at 903–08.[2] The panel vacated the district court's order denying remand and directed the district court to consider Defendants' "alternative bas[e]s for jurisdiction" it had not considered in its first order. *Id.* at 903–08, 911 & n.12. On remand, the district court properly rejected Defendants' additional grounds for removal, finding them foreclosed by *San Mateo III* and *Honolulu II*. 1-ER-4–15.

Defendants' current appeal repackages two of their previous removal theories, asserting evidence and arguments they chose not to present earlier. First, Defendants reiterate their federal-officer removal arguments, based on the same "new" evidence this Court reviewed and found insufficient in *Honolulu II*. Second, they resurrect an abandoned argument for federal-question jurisdiction under *Grable* based on their

---

[2] Defendants also seek to preserve additional theories they concede are foreclosed by *San Mateo III* and *Honolulu II*. *See* Defendants-Appellants' Opening Brief ("OB") at 5 & n.2, 6 & nn. 3–4, 56–57.

anticipated First Amendment defenses, a theory they waived by failing to raise it in the prior appeal, and which every court to consider it has rejected.

The Court need not reach the merits of either theory. Under 28 U.S.C. §§ 1446(b)(1) and 1653, Defendants are precluded from asserting their new federal-officer evidence and theories, which far exceed the scope of Defendants' notices of removal ("NOR") and which Defendants did not introduce until more than three years into the proceedings. Independently, Defendants are collaterally estopped from relitigating federal-officer removal because this Court held in *Honolulu II* that Defendants' "new" evidence and arguments did not support removal. Defendants also waived their First Amendment/*Grable* theory by failing to raise it in the prior appeal. Defendants are estopped from relitigating their First Amendment theory for the additional reason that the Third Circuit rejected it on the merits when Defendants raised it in *Hoboken II*.

Although the Court may affirm the district court's remand order without reaching the merits, Defendants' new theories are baseless—as courts nationwide have concluded. There is no federal-officer removal jurisdiction because Defendants do not show they acted under federal officers, do not show that their purported federal acts relate to the conduct challenged in the complaints, and fail to adequately allege a colorable federal defense. There is no federal-question jurisdiction under

*Grable* because the First Amendment at most provides Defendants a federal defense they can assert on remand.

The Court should affirm the district court's remand order. Because this Court's decisions in *Oakland*, *San Mateo III*, and *Honolulu II* "obviously control[]" this appeal, the People respectfully request summary disposition without oral argument pursuant to Ninth Circuit Rule 3-6(a)(2). *See United States v. Hooton*, 693 F.2d 857, 858 (9th Cir. 1982) (per curiam).

## JURISDICTIONAL STATEMENT

This Court has jurisdiction to review the district court's order granting the People's renewed motion to remand. *See* 28 U.S.C. §§ 1291, 1447(d); *Baltimore III*, 141 S. Ct. 1532.

## ISSUES PRESENTED

1.    Whether the district court lacked subject-matter jurisdiction under the federal-officer removal statute, 28 U.S.C. § 1442, where Defendants' federal-officer-removal arguments were precluded by 28 U.S.C. §§ 1446 and 1653 and by collateral estoppel; and where Defendants have failed to show they acted under a federal officer within the meaning of the statute, failed to demonstrate that the conduct in the People's complaint relates to the direction of a federal officer, and failed to raise a colorable federal defense.

2.     Whether the district court lacked federal-question jurisdiction under 28 U.S.C. §§ 1331 and 1441(a), where Defendants failed to assert their First Amendment theory of *Grable* jurisdiction in the prior appeal; where that theory is collaterally estopped by a final judgment against Defendants in the Third Circuit; and where Defendants' First Amendment defenses are not prima facie elements of the People's claims.

## STATEMENT OF ADDENDUM

Pursuant to Ninth Circuit Rule 28-2.7, the People have bound to this brief a statutory addendum.

## STATEMENT OF THE CASES

### I.     The Complaints

Defendants have known for decades that use of their fossil-fuel products creates greenhouse gas emissions that change the Earth's climate, causing sea level rise and devastating consequences for coastal communities like Oakland and San Francisco. 5-ER-1074–1077, 5-ER-1089–1094, ¶¶ 1–2, 8–9, 56–61; 6-ER-1186–1190, 6-ER-1203–1208, ¶¶ 1–2, 8–9, 57–62. Instead of sharing their specialized scientific knowledge with the public, Defendants engaged in a deliberate campaign to wrongfully promote increased use of their fossil-fuel products while concealing their knowledge of these products' dangers, working to cast doubt on broadly accepted climate science, and misleadingly portraying their products as

environmentally responsible, thereby significantly delaying the transition to a lower carbon future and adaptation to the impacts of climate change. 5-ER-1075–1076, 5-ER-1094–1101, ¶¶ 5–7, 62–83; 6-ER-1188, 6-ER-1208–1216, ¶¶ 5–7, 63–84.

To abate the nuisance conditions within their municipalities caused by Defendants' deceptive and wrongful conduct, the San Francisco and Oakland City Attorneys filed suit in California state court, each pleading a single "representative" claim under California's public nuisance statutes, on behalf of the People. *See* Cal. Civ. Code §§ 3479, 3480, 3491, 3494; Cal. Civ. Proc. Code § 731.

## II.    Removal and Federal Court Proceedings

Defendants asserted seven theories of removal jurisdiction. *See* 5-ER-1036–1038; 5-ER-1134–1136. The district court accepted one, concluding that the People's claims were "necessarily governed by federal common law." 5-ER-1026. The People amended their complaints "to conform to the Court's ruling" by adding federal common law public nuisance claims, and "reserve[d] all rights with respect to whether jurisdiction is proper in federal court." 5-ER-893, ¶ 12; 5-ER-959, ¶ 12.[3] The district court then granted Defendants' motions to dismiss for failure to state a claim, 4-ER-858–873, and granted four of the Defendants' motions to dismiss for lack of personal jurisdiction, 1-SER-73–80.

---

[3] To accomplish this protective amendment, the City of Oakland and the City and County of San Francisco also joined as plaintiffs.

On appeal, this Court vacated the district court's order denying remand. *Oakland*, 969 F.3d 895. The Court held that neither exception to the well-pleaded complaint rule was satisfied, ruled that neither federal common law nor Defendants' other arguments provided jurisdiction under the *Grable* and complete preemption doctrines, and remanded for the district court to consider Defendants' "alternative bas[e]s for jurisdiction." *Id.* at 903–08, 911 & n.12.

The district court did so, and rejected Defendants' remaining removal theories based on federal-officer jurisdiction, the Outer Continental Shelf Lands Act ("OSCLA"), the federal enclave doctrine, and Defendants' new *Grable* argument based on potential First Amendment defenses. 1-ER-4–15. The district court found that each of Defendants' asserted grounds for federal-officer jurisdiction was foreclosed by this Court's precedents in *San Mateo III* and *Honolulu II*. 1-ER-11–15. The court recognized that *San Mateo III* precluded removal under *Grable*, and rejected Defendants' First Amendment *Grable* theory on its merits, as has every court to consider that theory. *See* 1-ER-9–11.[4]

---

[4] The district court also vacated its prior order dismissing four Defendants for lack of personal jurisdiction. 1-ER-15–16. Defendants argue without support that if this Court reverses the remand order, "the personal jurisdiction dismissal order should be reinstated." OB 9 n.5. Given legal developments since the district court's personal jurisdiction ruling, however, that would be improper. In the unlikely event this Court concludes removal was proper, it should remand for the district court to reconsider personal jurisdiction including in light of *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021), which eliminated a critical facet of

## SUMMARY OF ARGUMENT

Defendants' removal theories have been repeatedly rejected by the federal appellate courts, including by this Court in *Oakland*, *San Mateo II*, *San Mateo III*, and *Honolulu II*. Defendants nonetheless reassert two grounds for removal they did not preserve. Both remain meritless.

**Federal-Officer Jurisdiction**: The People's state-law public nuisance claims are not removable under the federal-officer removal statute, 28 U.S.C. § 1442(a)(1). Defendants seek to sidestep this Court's rejection of their federal-officer theory in *San Mateo II* by introducing additional factual allegations and legal arguments they never raised in their NORs, and which this Court found meritless in *Honolulu II*.

The Court can reject Defendants' new arguments on either of two independent grounds without reaching the merits.

*First*, the removal statute prohibits a defendant from adding new jurisdictional allegations more than 30 days after receipt of the complaint. After that time,

---

the district court's analysis. *Compare* 1-SER-77–78 (district court stated it could find personal jurisdiction only "if 'but for' the contacts between the defendant and the forum state, the plaintiff's injury would not have occurred," while here, the People's injuries "would have occurred even without regard to each defendant's California contacts") *with Ford*, 141 S. Ct. at 1026, 1029 (clarifying that the Supreme Court had "never framed the specific jurisdiction inquiry as always requiring proof of causation—*i.e.*, proof that the plaintiff 's claim came about because of the defendant's in-state conduct," and rejecting defendant's argument that jurisdiction was lacking because "without [its forum state] contacts the plaintiffs' claims would be just the same."). If this case returns to the district court, it should decide in the first instance whether personal jurisdiction exists under *Ford*.

amendment is permitted only to clarify previously asserted but technically defective allegations. *Barrow Dev. Co. v. Fulton Ins. Co.*, 418 F.2d 316, 317 (9th Cir. 1969). Here, Defendants did not present their "expanded record" asserting various relationships between Defendants and the federal government until more than *three years* after removing the cases. Because Defendants' NORs did not assert or even cite the supposed federal-officer relationships Defendants now rely on, Defendants' new jurisdictional arguments are untimely and precluded.

*Second*, Defendants should be estopped from relitigating their theory of federal-officer removal. Although Defendants' federal-officer position is new in *these* cases, this Court found the same evidence and arguments did not support removal in *Honolulu II*—where all Defendants were parties. These circumstances present a classic instance where estoppel is appropriate.

Defendants' federal-officer removal theory also fails on the merits. *First*, Defendants do not show that they acted under federal officers. The acts they identify either constitute arm's-length contractual relationships or involve simple compliance with the law, which are both insufficient. *Second*, those acts do not relate to the People's claims, which challenge Defendants' *wrongful promotion* of their fossil-fuel products. Although Defendants attempt to recast the complaints as challenging their *production* and sale of fossil fuels, public nuisance liability under California law cannot be premised on the negligent or reckless sale of a dangerous

product, without more. State law requires "far more egregious" conduct like "misleading" "affirmative promotion" "while knowing that [the products' intended] use would create a public health hazard." *People v. ConAgra Grocery Prods. Co.*, 17 Cal. App. 5th 51, 83–84, 91–94 (2017), *cert. denied*, 139 S. Ct. 377 (2018) (quoting *Cnty. of Santa Clara v. Atl. Richfield Co.*, 137 Cal. App. 4th 292, 309 (2006)). The People's deceptive promotion allegations are essential to their claims under state law, and Defendants do not allege that federal officers directed or even ratified their climate-deception campaign. *Third*, Defendants fail to assert a colorable federal defense.

*Grable* **Jurisdiction**: This Court has already determined that the People's "state-law claim[s] do[] not raise a substantial federal issue" and there is no federal-question jurisdiction under *Grable*, 545 U.S. 308. *Oakland*, 969 F.3d at 907. Defendants nonetheless raise a different *Grable* jurisdiction theory, based on the First Amendment. Again, the Court should reject Defendants' *Grable* arguments on alternative procedural grounds, as well as on the merits.

*First*, Defendants waived their new *Grable* theory by failing to assert it in the original remand proceedings or the prior appeal, which considered *Grable* at length. *Second*, Defendants should be estopped from relitigating their First Amendment theory because it was already rejected in *Hoboken II*, 45 F.4th at 709, another case where all Defendants here are parties.

11

Even if the Court reaches the merits, the Court should reject Defendants'
baseless and entirely unsupported First Amendment/*Grable* theory, as every other
court to consider the theory has done in similar climate-deception cases.[5] At most,
Defendants' First Amendment arguments could give rise to a federal defense, but
federal defenses do not create removal jurisdiction.

## ARGUMENT

I. **These Cases Are Not Removable Under the Federal-Officer Removal
Statute.**

### A. Defendants Improperly Rely on Evidence and Arguments That Far Exceed the Scope of Allegations in Their NORs.

Defendants' federal-officer removal theory relies entirely on evidence and
arguments not properly before the Court. The Court may affirm on that basis alone.

The removal procedure statute prohibits removal more than 30 days after
receipt of a state court complaint, "through service or otherwise." 28 U.S.C.
§ 1446(b)(1). Once that window has closed, "[d]efective allegations of jurisdiction"
in a timely filed notice of removal "may be amended," *id.* § 1653, but amendment is
permissible "*solely* to clarify 'defective' allegations of jurisdiction *previously
made*." *Barrow*, 418 F.2d at 317 (emphasis added). A defendant may correct
allegations that are "defective in form," such as an "ambiguous" allegation of

---

[5] *See Hoboken II*, 45 F.th at 709; *Annapolis*, 2022 WL 4548226, at *9–10; *Delaware*,
578 F. Supp. 3d at 632–34; *Hoboken I*, 558 F. Supp. 3d at 204–05; *Connecticut*,
2021 WL 2389739, at *10.

citizenship in a diversity case. *Id.* at 318; *see also Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 831 (1989). A defendant may not, however, amend "to add allegations of substance." *Barrow*, 418 F.2d at 317. Nor may it advance "new argument[s]" for removal or otherwise "change" the theories of subject-matter jurisdiction asserted in the notice. *Ortiz v. Tara Materials, Inc.*, No. 21-CV-00373-AJB-AHG, 2021 WL 5982289, at *2–3 (S.D. Cal. Dec. 17, 2021).

Here, Defendants' NORs premised federal-officer jurisdiction exclusively on two relationships with the federal government: (1) a unit plan contract with the Navy at the Elk Hills Petroleum Reserve, and (2) mineral rights on the Outer Continental Shelf ("OCS") leased from the government. *See* 5-ER-1058–1060, ¶¶ 57–61; 5-ER-1156–1158, ¶¶ 57–61. In *San Mateo II*, this Court rejected Defendants' attempts to remove materially identical climate-deception cases based on those relationships. 960 F.3d at 601–03. After the first appeal in this case, Defendants tried to evade *San Mateo II*'s holdings by submitting what they characterized as "additional evidence" in opposition to the People's renewed remand motion. *See* 1-SER-52.

The new materials—totaling 1,425 pages—go far beyond "clarify[ing] 'defective' allegations," *Barrow*, 418 F.2d at 317, or correcting "minor technical" problems in Defendants' removal notices, *see Wood v. Crane Co.*, 764 F.3d 316, 322 (4th Cir. 2014). Instead, the submission presents two entirely new arguments, based on (1) Defendants' fuel production during the Second World War ("WWII")

purportedly under government direction, and (2) Defendants' sales of "specialized" fuels to the military over time. *See* OB 17–34. Neither relationship is mentioned *anywhere* in Defendants' NORs, and Defendants may not "add allegations of substance" to salvage their otherwise inadequate notices. *Barrow*, 418 F.2d at 317. These belated efforts are a bald "attempt[] to create jurisdiction where none existed" at the time of removal. *Rockwell Int'l Credit Corp. v. U.S. Aircraft Ins. Grp.*, 823 F.2d 302, 304 (9th Cir. 1987), *overruled on other grounds by Partington v. Gedan*, 923 F.2d 686 (9th Cir. 1991).

This Court in *San Mateo II* rejected every federal-officer removal argument asserted in Defendants' NORs. That should end the inquiry, and the Court should reject Defendants' untimely theories.

### B. Defendants Should Be Estopped from Relitigating Their Federal-Officer Removal Theory.

Defendants' new federal-officer removal arguments independently may be rejected on collateral estoppel grounds because Defendants already litigated and lost the same arguments on the same record before this Court in *Honolulu II*.

Offensive non-mutual collateral estoppel precludes "a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979). That doctrine applies when (1) the defendant had "a full and fair opportunity to litigate the identical issue in the prior action, (2) the issue was actually litigated in the prior

action, (3) the issue was decided in a final judgment, and (4) the party against whom issue preclusion is asserted was a party or in privity with a party to the prior action." *Syverson v. Int'l Bus. Machs. Corp.*, 472 F.3d 1072, 1078 (9th Cir. 2007) (citations omitted). When those requirements are satisfied, the defendant should be precluded from relitigating the issue, unless undue prejudice would result. *See id.* at 1079.

This Court's decision in *Honolulu II* satisfies all four requirements for estoppel. All Defendants were parties to *Honolulu II*, which involves similar state-law public nuisance claims for local environmental harms caused by Defendants' deceptive promotion of their fossil-fuel products. *Compare* 5-ER-1075–1078, 5-ER-1105–1106, ¶¶ 5–11, 93–98 (*Oakland* complaint), *and* 6-ER-1188–1190, 6-ER-1222–1224, ¶¶ 5–11, 94–99 (*San Francisco* complaint), *with* Complaint, *City & Cnty. of Honolulu v. Sunoco LP, et al.*, No. 1CCV-20-380 (Haw. Cir. Ct. Mar. 9, 2020), ¶¶ 8–13, 154–63, *and* Complaint, *Cnty. of Maui v. Sunoco LP, et al.*, No. 2CCV-20-283 (Haw. Cir. Ct. Oct. 12, 2020), ¶¶ 8–13, 204–13. Defendants unquestionably had a full and fair opportunity to litigate their federal-officer removal theory in *Honolulu I* and *Honolulu II*, which they exercised vigorously. Defendants there proffered the same evidence and arguments they raise here regarding their conduct during WWII and fuel sales to the military, *see infra* Part I.C, and the district court and this Court rejected those arguments, finding no basis for federal-officer jurisdiction. *See Honolulu II*, 39 F.4th at 1106–10; *Honolulu I*, 2021 WL 531237, at

*4–7. These rulings are "final judgments" for purposes of estoppel, and are not subject to further review since the Supreme Court denied Defendants' petition for certiorari. *See supra* n.1; *see Harmston v. City & Cnty. of S.F.*, 627 F.3d 1273, 1278 (9th Cir. 2010) (remand orders are "final for purposes of [28 U.S.C.] § 1291").[6]

None of the "indices of unfairness" preclude estoppel here. *See Syverson*, 472 F.3d at 1079. *First*, the People did not "adopt a 'wait and see' attitude in the hope that" *Honolulu* "would result in a favorable judgment" and then seek to capitalize on that judgment through estoppel. *Id.* (quotation omitted). The People brought these actions before the *Honolulu* and *Maui* cases were filed, and promptly moved to remand. *See id. Second*, Defendants had the same "incentive" to litigate their federal-officer removal theory in *Honolulu* "with full vigor," and they did. *See id. Third*, there is no "suggest[ion] that reliance on a single adverse judgment would be unfair." *Syverson*, 472 F.3d at 1079. This Court's rejection of Defendants' federal-officer

---

[6] Each requirement for estoppel also applies to this Court's rejection of Defendants' federal-officer removal arguments in *San Mateo II*, 960 F.3d at 600–03, and the similar rejection of those arguments by the Fourth Circuit in *Baltimore IV*, 31 F.4th at 229–38, and the First Circuit in *Rhode Island III*, 35 F.4th at 53 n.6. All Defendants are parties to each of those climate-deception cases, which include similar state-law public nuisance claims. Defendants cannot overcome the preclusive effects of these decisions by relying on their expanded record of historical evidence and corresponding arguments, which they could have offered in *San Mateo*, *Baltimore*, and *Rhode Island* but chose not to. Defendants must "bear[] the consequences" of that choice, which bars them from presenting "new evidentiary facts . . . to obtain a different determination" on federal-officer removal. *See United States v. Castillo-Basa*, 483 F.3d 890, 903 & n.10 (9th Cir. 2007) (cleaned up).

theory in *Honolulu II* is consistent with unanimous judicial authority, including affirmances of remand from this Court in *San Mateo II*, the First Circuit in *Rhode Island III*, the Third Circuit in *Hoboken II*, the Fourth Circuit in *Baltimore IV*, and the Eighth Circuit in *Minnesota II*. *See supra* n.1. *Fourth*, there are no "procedural opportunities" that were "unavailable" to Defendants in *Honolulu* and "could readily cause a different result" here. *See id.* (quotations omitted); *see also Fireman's Fund Ins. Co. v. Stites*, 258 F.3d 1016, 1021 (9th Cir. 2001). These circumstances present a textbook case for applying collateral estoppel.

### C. Federal-Officer Jurisdiction Does Not Exist.

If the Court does consider Defendants' asserted grounds for federal-officer jurisdiction, it should reject them for the same reasons stated in *Honolulu II*. Defendants argued in *Honolulu II* that they acted under federal officers based on six different theories.[7] *Honolulu II* held that none of those theories conferred jurisdiction. 39 F.4th at 1107–10. Defendants raised the same six theories in the district court here but abandon all but two on appeal: provision of specialized fuels to the military and their petroleum-related activities during WWII. *See* OB 11–12.

---

[7] (1) Production of fossil fuels under Defense Production Act orders; (2) activities in relation to the Strategic Petroleum Reserve; (3) fossil-fuel production on the OCS; (4) operation of the Elk Hills reserve; (5) fuels sold to the military; and (6) conduct during WWII. *See* Appellants' Opening Brief, *City & Cnty. of Honolulu v. Sunoco LP, et al.*, No. 21-15313, Dkt. 38, at 28–52 (9th Cir. July 19, 2021).

This Court should reject those two grounds as it did in *Honolulu II*. Defendants still do not offer a sufficient colorable federal defense related to those two theories, *see Honolulu II*, 39 F.4th at 1110, and even if they could, Defendants' theories still fail at every stage of the analysis.

A private defendant removing pursuant to 28 U.S.C. § 1442(a)(1) "must establish: (a) it is a person within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and the plaintiff's claims; and (c) it can assert a colorable federal defense." *San Mateo III*, 32 F.4th at 755 (cleaned up). To satisfy the "causal nexus" requirement, "the private person must show: (1) that the person was 'acting under' a federal officer in performing some 'act under color of federal office,' and (2) that such action is causally connected with the plaintiffs' claims against it." *Id.* (citation omitted).

Defendants cannot satisfy the requirements of Section 1442. *See, e.g.*, *Honolulu I*, 2021 WL 531237, at \*4–7; *Honolulu II*, 39 F.4th at 1107–10; *Hoboken I*, 558 F. Supp. 3d at 206–09; *Delaware*, 578 F. Supp. 3d at 634–39; *Hoboken II*, 45 F.4th at 712–13; *Minnesota I*, 2021 WL 1215656, at \*8–10; *Minnesota II*, 63 F.4th at 714–16; *Annapolis*, 2022 WL 4548226, at \*5–8. At most, the NORs' allegations show that some Defendants entered "arm's-length business arrangement[s] with the federal government" or complied with federal regulation, both of which are *per se* insufficient to establish that Defendants "acted under" federal authority. *See San*

18

*Mateo III*, 32 F.4th at 757; *accord Honolulu II*, 39 F.4th at 1107. Defendants also fail to demonstrate a nexus between their conduct purportedly at federal direction and the conduct challenged in the People's complaints. Further, Defendants' NORs do not assert a colorable federal defense, and their delinquent attempt to substantiate a government-contractor defense fails on its own terms.

### 1. Defendants Did Not Act Under Federal Officers.

A private defendant removing under Section 1442 must show it was involved in "an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 152 (2007). A party does not act under federal authority when it "enters into an arm's-length business arrangement with the federal government or supplies it with widely available commercial products or services." *San Mateo III*, 32 F.4th at 757. Nor does a private company's "'*compliance* with the law (or *acquiescence* to an order)' amount to '"acting under" a federal official . . . even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored.'" *Id*. (quoting *Watson*, 551 U.S. at 152–53) (cleaned up). Defendants' conduct here amounts to either mere compliance with the law or arm's-length business agreements with the federal government, rather than the federal "subjection, guidance, or control" required to support removal. *San Mateo III*, 32 F.4th at 756 (quoting *Watson*, 551 U.S. at 151).

### a. Defendants Did Not Act Under Federal Officers by Selling Fuel to the Military.

Defendants first rely on their production and sale of non-commercial fuels for the military. OB 18–26. To carry their burden, Defendants must show that "the government supervised or controlled" the development or manufacture of those fuels, *Washington v. Monsanto Co.*, 738 F. App'x 554, 555 (9th Cir. 2018), such as by "sharing the day-to-day operating responsibility" with Defendants, *Goncalves ex rel. Goncalves v. Rady Child.'s Hosp. San Diego*, 865 F.3d 1237, 1246 (9th Cir. 2017) (quotation omitted). The district court correctly concluded that Defendants' fuel contracts do not meet that standard because they were "arm's length business agreements." 1-ER-15.

Defendants' own documents confirm government officials played a minimal role in designing, developing, and manufacturing fuels for the U-2, OXCART, and Blackbird projects. One historical account of the Blackbird project attributes its success to the government's "management philosophy" of giving maximal "free[dom]" to its private contractors, meaning that officials refrained from "substituting their judgment for that of the contractors," and that "[r]equirements for Government approval as a prerequisite to action were minimal." 2-ER-217–18.

Similarly, a detailed history of the OXCART and U-2 projects shows that private contractors had primary responsibility for design, development, and manufacture. *See, e.g.*, 2-SER-185 ("Lockheed . . . had originally developed the

CL-282 [aka, the U-2] on its own"); 3-SER-418–22 (Lockheed designed and built OXCART model). The government left day-to-day operations and management to the companies. *See, e.g.*, 2-SER-193 (describing "[Lockheed's] approach to prototype development"); 3-SER-440–41 (top Lockheed engineer "t[ook] charge of the OXCART's development himself"). This "lack of detailed and restricting [government] specifications" is among the main reasons the OXCART and U-2 projects were able to produce spy planes "in record time." 3-SER-463. Defendants' evidence demonstrates that "the government was relying on the expertise of [private contractors]" to manufacture the planes, "not vice versa," and thus does not show an acting-under relationship. *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 728 (9th Cir. 2015) (cleaned up).

BP and Shell's more recent contracts for military fuels and additives also demonstrate arm's-length business relationships with the government, rather than the "unusually close" relationship needed for federal-officer removal. *Watson*, 551 U.S. at 153. Defendants erroneously contend that the government's detailed specifications for certain military fuels show they acted under federal officers in supplying those fuels. *See* OB 18–21. But this Court has already held that detailed fuel specifications do not transform ordinary commercial contracts with the government into an 'acting under' relationship. *San Mateo III*, 32 F.4th at 758 (CITGO's fuel supply contracts with NEXCOM "evince an arm's-length business

relationship" even though NEXCOM imposed fuel specifications and a right of inspection); *see also Baltimore IV*, 31 F.4th at 231 (military contracts "set[ting] forth detailed 'fuel specifications' . . . are a far cry from the type of close supervision" required for removal (citation omitted)). Defendants' specialized fuel contracts do not satisfy the acting-under prong because "[a]rm's length business agreements with the federal government for highly specialized products remain arm's length business agreements." 1-ER-15.

Defendants' attempt to distinguish *San Mateo III* by emphasizing that NEXCOM purchased commercial rather than military fuels falls short for several reasons. *First*, the government specifications for JP-8 fuel cited by Defendants incorporate widely applicable protocols developed by the American Society for Testing and Materials ("ASTM"). *See* 3-ER-457–59. These unremarkable quality assurance benchmarks are "typical of any commercial contract" and demonstrate that the military's requirements did not involve close guidance or control. *See Baltimore IV*, 31 F.4th at 230–31 (no acting-under relationship created by "fuel supply agreements" that "required compliance with specified [ASTM] standards" (quotation omitted)). *Second*, Defendants' argument overstates the "bespoke" nature of these military fuels. *See* OB 25. The JP-4, JP-5, and JP-8 fuels are not "virtually equivalent to" commercial airlines fuels. *See* NREL, *Investigation of Byproduct Application to Jet Fuel*, NREL/SR-510-30611, at 5 (Oct. 2001),

tinyurl.com/53xb2w9h; *see also id*. ("The JP-4, JP-5, JP-8 and *equivalent* commercial fuels . . . ." (emphasis added)).

Defendants' military contracts for JP-5 and JP-8 fuel are likewise unremarkable commercial agreements secured by a winning bid and negotiated at arm's length. *See, e.g.*, 4-ER-651–52 (noting JP-5 contract was awarded through "Full and Open Competition" from among 27 offers and describing "Solicitation Procedures" as "*Negotiated* Proposal/Quote") (emphasis added); 4-ER-654–55 (same, for JP-8 contract). Nothing in those contracts suggests the government controlled or supervised the "day-to-day" development or manufacture of those fuel products. *Goncalves*, 865 F.3d at 1246 (citation omitted).

Defendants' business dealings with the military differ in kind from the government-contractor relationship in *Baker v. Atlantic Richfield Co.*, where the defendant was subject to "continuous federal supervision." 962 F.3d 937, 943 (7th Cir. 2020). They are also unlike the government-subcontractor relationship in *Agyin v. Razmzan*, where the federal government controlled the "clinic operations" at the defendant's place of employment, and federal officers visited the clinic "at least once per project/designation period in order to verify compliance." 986 F.3d 168, 172, 178 (2d Cir. 2021) (cleaned up). That level of government supervision is absent here.

### b. Defendants Did Not Act Under Federal Officers When They Produced and Sold Fossil Fuels During WWII.

Defendants contend they acted under federal officers when they produced fossil fuels and built pipelines during WWII. *See* OB 27–34. The district court correctly held that these allegations do not support removal either; they merely show that some Defendants "compli[ed] with the law" or "acquiesce[d] to . . . order[s]" regarding wartime petroleum production. 1-ER-13–14 (quoting *San Mateo III*, 32 F.4th at 757) (emphases removed).

Defendants contend they (1) sold fossil fuels to the federal government, (2) built and operated government-financed production facilities, and (3) complied with government "directives" to increase fossil-fuel production. *See* OB 27–32. Defendants do *not* show that the government directly controlled or supervised how they produced their fossil-fuel products. For example:

- Defendants' expert claims the federal government built "government-owned industrial plants, managed by private companies under government direction," 4-ER-796, but he offers no details about what that "government direction" entailed.[8]

- For similar reasons, Defendants cannot rest federal-officer removal on their purported involvement in constructing two pipelines from the Gulf Coast to the Atlantic seaboard. *See* OB 31–32. The record lacks any evidence that the federal government controlled *how* those pipelines were

---

[8] Tellingly, the expert identifies Standard Oil's operation of the Elk Hills reserve as an example of a "government-owned, contractor-operated (GOCO) industrial facilit[y]." 4-ER-796–97. But as this Court has held, that arrangement does not constitute an acting-under relationship. *San Mateo III*, 32 F.4th at 758–59.

built. Indeed, Defendants' own expert opined that the *oil companies* "provided the government" with the "know-how in the areas of pipeline construction and operation." 4-ER-795. As *Cabalce* instructs, government contractors do not operate "under federal supervision or control" when "the government [i]s relying on the expertise of [the contractor] and not vice versa." 797 F.3d at 728 (cleaned up).

- The rest of Defendants' evidence merely shows that oil companies and the federal government had a mutually beneficial, cooperative relationship during much of WWII.[9] But, as this Court reaffirmed in *San Mateo III*, those sorts of arm's-length business arrangements cannot support federal-officer removal. 32 F.4th at 758.

In short, nothing in the record establishes "an unusually close" relationship with the federal government that involves "detailed regulation, monitoring, or supervision." *See Watson*, 551 U.S. at 153.

Defendants attempt to derive an arising-under relationship from the oil industry's compliance with "directives" from the Petroleum Administration for War ("PAW"), which fails for two additional reasons. *First*, Defendants cannot plug the evidentiary gap in the record they submit with factual findings made in inapposite

---

[9] According to an account Defendants cite, the Petroleum Administration for War was "dedicated to the proposition that cooperation, rather than coercion, was the formula by which the forces of government and industry could best be joined." 2-ER-146. During a 1941 Office of Petroleum Coordination for National Defense conference, Interior Secretary Ickes stressed that "[t]he cooperation so far . . . has been very good." 2-ER-172. *See also* 3-SER-533 ("[n]o government agency had to compel [oil companies] to do the job" of producing fossil fuels during WWII).

cases brought under CERCLA[10] and the FLSA.[11] *See, e.g.*, OB 28–32. "As a general rule, a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it." *M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983); *see also Lasar v. Ford Motor Co*., 399 F.3d 1101, 1117 n.14 (9th Cir. 2005).

*Second*, even if the factual findings from those unrelated cases could be considered, the findings in *Shell I*—the only Ninth Circuit case cited—underscore the cooperative relationship between the oil industry and the military during WWII. 294 F.3d at 1049–50 (the military "relied almost exclusively on contractual agreements to ensure avgas production," and "the Oil Companies designed and built their facilities, maintained private ownership," "managed their own refinery operations," and "affirmatively sought contracts to sell avgas to the government," which "were profitable throughout the war"). Although the PAW had the power to direct petroleum production and transportation, *see* OB 31–32, federal direction was

---

[10] *United States v. Shell Oil Co.*, 294 F.3d 1045, 1048 (9th Cir. 2002) ("*Shell I*"); *Shell Oil Co. v. United States*, 751 F.3d 1282, 1285 (Fed. Cir. 2014); and *Exxon Mobil Corp. v. United States*, No. H-10-2386, 2020 WL 5573048, at *1–3 (S.D. Tex. Sept. 16, 2020).

[11] *Schmitt v. War Emergency Pipelines*, 175 F.2d 335, 336 (8th Cir. 1949).

unnecessary because the oil industry cooperated with the PAW and acquiesced to its orders and regulations.

Other courts have rejected essentially identical arguments from some of the same defendants in cases alleging pollution along the Louisiana coast: "The oil industry was indeed highly regulated, supervised, and monitored during WWII, and the regulation was both highly detailed and often quite specific. In this case, the facts demonstrate compliance with regulation. They do not demonstrate direction. The PAW was given power to direct. It threatened to direct. But threats are not themselves direction." *Par. of Plaquemines v. Riverwood Prod. Co.*, No. 18-cv-5217, 2022 WL 101401, at *9 (E.D. La. Jan. 11, 2022), *aff'd sub nom. Plaquemines Par. v. Chevron USA, Inc.*, No. 22-30055, 2022 WL 9914869 (5th Cir. Oct. 17, 2022), *cert. denied*, 143 S. Ct. 991 (2023). Defendants' wartime relationship with the government was marked by mere "compliance with the law" and "acquiescence to . . . order[s]" that do not satisfy Section 1442. *San Mateo III*, 32 F.4th at 757 (emphases removed).

### 2. Defendants' Purportedly Federal Activities Share No Nexus with the Conduct Challenged in the People's Complaints.

Even if Defendants did somehow act under a federal officer, none of those acts satisfies the nexus requirement of Section 1442.

To meet that requirement, a defendant must demonstrate that "the challenged acts [in a plaintiff's complaint] occurred because of what [the defendant] w[as] asked to do by the Government." *Goncalves*, 865 F.3d at 1245 (cleaned up). Defendants cannot satisfy this requirement for several reasons. *First*, Defendants' WWII-era conduct predates by several decades the wrongful promotion central to the People's claims. *Second*, consistent with California public nuisance law and other climate-deception cases, the People's complaints challenge Defendants' wrongful promotion and concealment of the climatic hazards of fossil fuels. Defendants do not, and cannot, allege this conduct was directed or even influenced by federal officers. Defendants' attempts to refocus the nexus inquiry on the connection between their purportedly federal acts and the People's injuries and requested remedy are unavailing. For these reasons, Defendants cannot satisfy Section 1442's nexus requirement.

### a. Defendants' WWII-era Activities Long Predate the Acts Challenged in the People's Complaints.

Section 1442 requires close temporal proximity between the wrongful conduct charged in the complaint and the official acts alleged in the removal notice. *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 124–

25 (2d Cir. 2007).[12] As the district court correctly held, Defendants do not—and cannot—explain how their conduct during WWII relates in any way to the climate-deception campaigns they waged decades later. *See* 5-ER-1095–98; 6-ER-1209–13; *see also* 1-ER-14 ("The alleged deceptive promotion, moreover, started well *after* the Second World War and therefore the wartime activities cannot be a plausible basis to hold any defendant liable . . . ."). That omission is fatal. *See Hoboken I*, 558 F. Supp. 3d at 208 (production of fossil fuels "during World War II . . . predates [p]laintiff's allegations" of climate deception); *Delaware*, 578 F. Supp. 3d at 635.

### b. Defendants Cannot Show that Federal Officers Directed Their Climate-Deception Campaign.

Defendants must establish a causal connection between the acts they allegedly took under color of federal authority and the deceptive commercial activity that forms the basis for liability in these lawsuits. *See Goncalves*, 865 F.3d at 1244–45. Defendants' attempt to satisfy the nexus prong by establishing a connection between the *production* of fossil fuels and the federal government fails because they focus on the wrong conduct. The People's complaints here target Defendants' "large-scale, sophisticated advertising and public relations campaigns to promote pervasive fossil fuel usage," including by "denying mainstream climate science or downplaying the

---

[12] *See also Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137–38 (2d Cir. 2008) ("Defendants must only establish that the act that is the subject of Plaintiffs' attack . . . occurred *while* Defendants were performing their official duties.").

risks of global warming." 5-ER-1075–76, ¶¶ 5–6; 6-ER-1188, ¶¶ 5–6. *See, e.g.*, *Honolulu II*, 39 F.4th at 1113 ("This case is about whether oil and gas companies misled the public about dangers from fossil fuels. It is not about companies that acted under federal officers . . . ."). Indeed, *San Mateo III* described materially indistinguishable cases as "focus[ing] on the defective nature of [Defendants'] fossil fuel products, [Defendants'] knowledge and awareness of the harmful effects of those products, and their 'concerted campaign' to prevent the public from recognizing those dangers." 32 F.4th at 754–55.

The People's allegations of wrongful deception are critical to their claims because under California law, manufacturing and selling a hazardous but lawful product cannot alone establish public nuisance liability. *Santa Clara*, 137 Cal. App. 4th at 309 ("Liability is not based merely on production of a product . . . ."); *City of Modesto Redev. Agency v. Super. Ct.*, 119 Cal. App. 4th 28, 43 (2004), *as modified on denial of reh'g* (June 28, 2004) (same); *San Diego Unified Port Dist. v. Monsanto Co.*, No. 15-CV-578-WQH-JLB, 2016 WL 5464551, at *7– 8 (S.D. Cal. Sept. 28, 2016) (same). Defendants' liability for contributing to a public nuisance requires proof of what the California Court of Appeal has characterized as "wrongful promotion." *ConAgra*, 17 Cal. App. 5th at 101; *see also Santa Clara*, 137 Cal. App. 4th at 309 (liability for defendants' "affirmative and knowing promotion of a product for a hazardous use" (cleaned up)). Yet, here, as in other climate-

30

deception cases, Defendants do not even attempt to establish the required connection between their purportedly federal acts and their climate-deception campaign.

Every court to consider Defendants' nexus arguments has found them inadequate because they fail to show the government directed Defendants' climate-deception campaign.[13] As the Fourth Circuit explained in *Baltimore IV*, fossil-fuel production "is necessary to establish the avenue of [the People's] climate-change-related injuries," but "it is not the source of tort liability." 31 F.4th at 233. The conduct that triggers Defendants' public nuisance liability is their deceptive marketing tactics to promote unrestrained consumption of their fossil-fuel products—*i.e.*, "the concealment and misrepresentation of th[os]e products' known dangers." *Id.* Thus, "the relationship between [the People's] claims and any federal authority over a portion of certain Defendants' production and sale of fossil-fuel products" is far "too tenuous to support removal under § 1442." *Id.* at 234; *see also Rhode Island II*, 979 F.3d at 60, *adhered to by Rhode Island III*, 35 F.4th at 53 n.6

---

[13]  *See Baltimore I*, 388 F. Supp. 3d at 568 (no nexus in part because there was no "indication that the federal government directed [defendants] to conceal the hazards of fossil fuels"); *Baltimore IV*, 31 F.4th at 234; *Rhode Island I*, 393 F. Supp. 3d at 152 (no nexus where defendants could not show their "sophisticated misinformation campaign" was "justified by their federal duty" (cleaned up)); *Rhode Island III*, 35 F.4th at 53 n.6; *Minnesota I*, 2021 WL 1215656, at *9; *Minnesota II*, 63 F.4th at 715); *Honolulu I*, 2021 WL 531237, at *7; *Boulder I*, 405 F. Supp. 3d at 976–77; *Connecticut*, 2021 WL 2389739, at *11; *Massachusetts*, 462 F. Supp. 3d at 47; *San Mateo I*, 294 F. Supp. 3d at 939; *Hoboken I*, 558 F. Supp. 3d at 207; *Annapolis*, 2022 WL 4548226, at *8.

("There is simply no nexus between anything for which Rhode Island seeks damages and anything the oil companies allegedly did at the behest of a federal officer.").

### c. The Remedies Sought by the People Do Not Create a Nexus to Defendants' Activities.

Unable to show the federal government was involved in their campaign of deception, Defendants try to rewrite the People's complaints while insisting the Court must "credit" their theory of what the People allege. OB 36; *see, e.g.*, OB 40 ("In short, Plaintiffs' complaints seek to recover based on Defendants' production of oil and gas."). But Defendants cannot "freely rewrite the complaint and manufacture a cause of action explicitly disclaimed by Plaintiff[s] and then ask the Court to accept their 'theory of the case' for purposes of removal." *Delaware*, 578 F. Supp. 3d at 636 n.21; *see also Minnesota I*, 2021 WL 1215656, at *5 ("To adopt Defendants' theory, the Court would have to weave a new claim for interstate pollution out of the threads of the Complaint's statement of injuries. This is a bridge too far."). To conclude otherwise would require the Court to ignore California law, which requires more than producing a hazardous product for public nuisance liability. *See ConAgra*, 17 Cal. App. 5th at 83–84; *Santa Clara*, 137 Cal. App. 4th at 309; *Modesto Redev. Agency*, 119 Cal. App. 4th at 43. It would also render the nexus requirement toothless: "if Defendants had it their way, they could assert *any* theory of the case, however untethered to the claims of Plaintiffs, because this Court must 'credit' that theory." *Honolulu I*, 2021 WL 531237, at *7. Defendants' attempt

to relegate the People's deception allegations to ancillary details rather than the source of liability, *see* OB 39, is particularly inappropriate because wrongful promotion is an indispensable element of public nuisance under California law—the only claim pleaded in each complaint.

*San Mateo III* already rejected these Defendants' misconstructions of analogous complaints filed by other California cities and counties. In holding that the claims there did not "aris[e] out of, or in connection with" Defendants' fossil-fuel production on the OCS, the decision characterized those complaints as "focus[ed] on . . . Defendants' fossil fuel products, [their] knowledge and awareness of the harmful effects of those products, and their 'concerted campaign' to prevent the public from recognizing those dangers." 32 F.4th at 754–55; *see also id.* at 747 ("[T]he substance of the[] claims [there] is the same as in *Oakland* . . . ."). For that reason, the plaintiffs' claims were "too attenuated" from Defendants' OCS production to permit removal under OCSLA. *Id*. at 754. The "arising out of, or in connection with" relationship required under OCSLA is analogous to the "for or relating to" relationship required by Section 1442, *see id.* at 751–54, and the same analysis and result are compelled here.

This Court should also reject Defendants' mischaracterizations of the People's Prayers for Relief.[14] Contrary to Defendants' assertion, *see* OB 38–39, the requested remedies are *not* untethered from Defendants' climate-deception campaigns. Instead, the People's recovery will necessarily be tied to those harms attributable to Defendants' concealment and deceptive promotion, as determined under California's substantial-factor test for causation. *See Rutherford v. Owens-Illinois, Inc.*, 16 Cal. 4th 953, 969 (1997), *as modified on denial of reh'g* (Oct. 22, 1997) (discussing judicial definition of substantial-factor standard). Accordingly, the People *will*, in fact, seek an abatement remedy that reflects "the purported marginal increase in fossil-fuel consumption caused by the asserted concealment and misrepresentations"—not the unlimited damages Defendants suggest. OB 38.

These lawsuits do not seek an abatement fund to enable the People to "adapt to *all* 'global warming impacts.'" OB 39. As the complaints make clear, the alleged nuisances here are the hazardous conditions *in San Francisco and Oakland* created

---

[14] Defendants rely on statements made by one of the People's previous attorneys about the nature of the People's claims. *See* OB 37–38. As the district court recognized, however, those statements characterized the People's *amended* complaints—not their original complaints, which have now been reinstated as the operative pleadings. *See* 1-ER-8 n.2. In any event, what matters is what the complaints actually allege and how those allegations relate to the elements of the People's public nuisance claims. It is well settled that "[s]tatements of law or legal argument . . . fall outside the concept of judicial admissions." *Lam Rsch. Corp. v. Schunk Semiconductor*, 65 F. Supp. 3d 863, 870 (N.D. Cal. 2014); *see Maloney v. Scottsdale Ins. Co.*, 256 F. App'x 29, 32 n.3 (9th Cir. 2007); *see also Alvarez v. Hill*, 518 F.3d 1152, 1158 (9th Cir. 2008).

by Defendants' tortious conduct. *See* 6-ER-1105–06; 7-ER-1222–24. *Those* nuisances can be abated by taking *local* measures to protect residents, property, and public infrastructure from the impacts of climate change. *See* 6-ER-1101–05; 7-ER-1216–22. Nuisance abatement will help the People survive the localized climate-change impacts exacerbated by Defendants' tortious conduct—it will not require Defendants to solve global warming or even reduce greenhouse gas emissions.

> **d. The People's Injuries Resulting from Climate Change Do Not Create a Nexus to Defendants' Activities.**

Defendants argue that the People's claims "necessarily encompass" their business dealings with the government because all fossil fuel consumption contributes to climate change, so the district court "should have focused not on [Defendants'] particular alleged acts" of deception the People allege but instead on the total "chain of causation" leading to the People's injuries. *See* OB 35–40. That misstates the law and asks the Court to ignore the actual allegations in the People's complaints. A removing defendant must show a nexus between federal authority and "the *challenged acts*" that the plaintiff alleges as the basis of liability. *Goncalves*, 865 F.3d at 1245 (emphasis added). It is insufficient to show that a minor, distant cause-in-fact of the plaintiff's injuries involved the federal government. *See also Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999) (removing defendant "must show

a nexus . . . [']between *the charged conduct* and asserted official authority'" (citation omitted) (emphasis added)).

None of Defendants' cited cases support their novel reading of the federal-officer nexus requirement. Indeed, several confirm that Section 1442 requires a nexus between the acts that trigger a defendant's liability and the acts purportedly directed by federal officers. In cases Defendants cite, the Fourth Circuit applied the same nexus standard as in *Baltimore IV*, requiring the defendants to show a "connection between the charged conduct and the asserted official authority." *Baltimore IV*, 31 F.4th at 234; *see also Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017) (same); *Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 256 (4th Cir. 2021) (similar). The defendants in *Sawyer* and *Arlington* alleged the federal government was *directly* involved in the acts for which the plaintiffs sued. *Sawyer*, 860 F.3d at 252, 258 (plaintiff alleged defendant failed to warn of asbestos in boilers, and defendant alleged "the Navy dictated the content of warnings on [those] boilers"); *Arlington*, 996 F.3d at 257 (plaintiff alleged defendants created "a public nuisance" by "filling certain opioid prescriptions," and defendants alleged "[they] were required to fill those prescriptions to comply with their duties under [a federal government] contract"). By contrast, here, as in *Baltimore IV*, Defendants do not and cannot argue that any

federal officer had anything to do with Defendants' wrongful promotion and concealment of the dangers of fossil fuels.

Defendants also cite *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 29 (2015), and *Devengoechea v. Bolivarian Republic of Venezuela*, 889 F.3d 1213, 1220 (11th Cir. 2018), but those cases are even less helpful to their arguments. Neither case concerns Section 1442—or analyzes the phrase "for or relating to." Instead, they interpret Congress's use of the words "based upon" in the Foreign Sovereign Immunities Act ("FSIA"), which withdraws sovereign immunity in any case where "the action is based upon a commercial activity carried on in the United States by [a] foreign state." 28 U.S.C. § 1605(a)(2). Neither case relates to this Court's interpretation of Section 1442's nexus requirement.[15]

In any event, *Sachs* and other similar cases undercut Defendants' proposed construction of Section 1442's nexus standard. The Court of Appeals in *Sachs* *broadly* posited that a claim was "based upon commercial activity" whenever commercial activity "form[ed] an essential element" of that claim. 577 U.S. at 32 (citation omitted). The Supreme Court rejected that "one-element approach," holding that FSIA's commercial-activity exception applied only when the alleged "wrongful conduct" itself qualified as commercial activity. *Id.* at 34–36 (exception

---

[15] Even in the context of FSIA cases, the Supreme Court "cautioned" that "the reach of [its] decision" in *Sachs* "was limited." *Sachs*, 577 U.S. at 36 n.2.

did not apply because "there [was] nothing wrongful about the sale of the Eurail pass standing alone"). Here, the wrongful conduct is Defendants' wrongful promotion and concealment of the climate hazards of fossil fuels, not their alleged production or sale of fossil fuels to the federal government.

*Fry v. Napoleon Community Schools*, 580 U.S. 154 (2017), is similarly inapposite. *Fry* interprets different words ("seeking relief") in a different statute (the Individuals with Disabilities Education Act). *Id.* at 157, 161. The decision nonetheless again undermines Defendants' proposed construction of Section 1442. *Fry* explained that "the gravamen of a complaint" is defined by "the conduct [that] violate[d]" the law, not by the "nature" of a plaintiff's injuries. *Id.* at170–71, 175 . Here, the gravamen of the People's complaints is Defendants' concealment and misrepresentation of the dangers of fossil fuels—*i.e.*, "the source of tort liability" in these climate-deception lawsuits (as in others). *Baltimore IV*, 31 F.4th at 233. It is not—despite Defendants' repeated insistence—the People's climate-related injuries. *See, e.g.*, OB 35–40.

In short, Defendants cannot identify *any* case that supports their efforts to refocus the nexus standard on the People's injuries rather than the charged conduct in the complaints.

### 3. Defendants Do Not Raise Any Colorable Federal Defense.

This Court need not reach the "colorable federal defense" prong of Section 1442 because Defendants fail to satisfy either the arising-under or nexus prongs. *See San Mateo III*, 32 F.4th at 760. Nonetheless, Defendants' effort to conjure a colorable government-contractor defense fails for two reasons. First, Defendants' NORs assert the same "conclusory statements and general propositions of law" that this Court rejected in *Honolulu II* as insufficient to satisfy the third prong of Section 1442, 39 F.4th at 1110; *see* 5-ER-1060–61, ¶ 62; 5-ER-1158–59, ¶ 62, and Defendants have long since waived the opportunity to support these conclusory assertions with legal and factual analysis. Not until this appeal, after nearly six years of removal litigation in the district court and this Court, did Defendants assert that defense. Second, Defendants fail to establish a colorable government-contractor defense because they have not shown that defense can apply to a public nuisance claim grounded in a manufacturer's wrongful promotion, rather than in the provision of a harmful or defective product.

Defendants' NORs state their intention "to raise numerous meritorious federal defenses, including . . . the government contractor defense." 5-ER-1060, ¶ 62; 5-ER-1158, ¶ 62. The only facts or analysis supporting that assertion is the bare conclusion that their newly proffered defense is "more than colorable." 5-ER-1061, ¶ 62; 5-ER-1159, ¶ 62. That is the sum total of the analysis Defendants provided prior to their

opening brief on this second appeal. Through two rounds of removal briefing in the district court and in their previous appeal to this Court, Defendants barely referred to that defense. *See* 2-SER-131; Answering Brief of Defendant-Appellee Chevron Corp., *City of Oakland v. BP P.L.C.*, No. 18-16663, Dkt. 78, at 40–41 (May 10, 2019) ("2019 Br."); 1-SER-66; 1-SER-14–16. Evaluating essentially the same barebones assertions in *Honolulu II*, this Court held that "simply assert[ing] a defense and the word 'colorable' in the same sentence" does not satisfy Section 1442's third prong. 39 F.4th at 1110 (citation omitted). That is the answer here as well.

Defendants cannot for the first time establish a colorable federal defense by presenting an entirely new legal and factual analysis on appeal. *See Raich v. Gonzales*, 500 F.3d 850, 868 (9th Cir. 2007) ("It is a long-standing rule in the Ninth Circuit that, generally, 'we will not consider arguments that are raised for the first time on appeal.'" (citation omitted)). Defendants' opening brief represents their *seventh* pass at substantiating federal-officer removal in these actions. Their longstanding failure to even try to carry the "defendant['s] . . . burden of proving by a preponderance of the evidence that the colorable federal defense" prong "ha[s] been met," *Cabalce*, 797 F.3d at 732 n.6 (cleaned up), precludes a seventh bite at the apple.

In any event, Defendants cannot establish that their proposed government-contractor defense applies to claims grounded in a manufacturer's wrongful promotion of a hazardous product. Defendants recite and apply the established elements of a government-contractor defense to *design-defect* claims,[16] *see* OB 43–44, even though liability under the People's complaints hinges on Defendants' wrongful promotion and concealment of the dangers of fossil fuel use, *not* their production and sale of fossil fuels, *see supra* Part I.C.2.b. Further, both cases cited by Defendants involved nuisance claims targeting distribution of allegedly harmful products, rather than the wrongful promotion that forms the basis of the People's claims here. *See Arlington*, 996 F.3d at 255 (finding colorable government-contractor defense where defendants "plausibly alleged that they distributed opioid medications pursuant to reasonably precise specifications found in the DOD contract"); *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804, 2023 WL 166006, at *7 (N.D. Ohio Jan. 12, 2023) (targeting defendant's "process[ing] [of] prescription claims and dispens[ing] [of] pharmaceuticals to TRICARE beneficiaries"). Defendants have not carried their burden of establishing a colorable claim that the government-contractor defense could apply here. *See Honolulu II*, 39

---

[16] *See Boyle v. United Techs. Corp.*, 487 U.S. 500, 502 (1988) ("This case requires us to decide when a contractor providing military equipment to the Federal Government can be held liable under state tort law for injury caused by a design defect."); *Getz v. Boeing Co.*, 654 F.3d 852, 861 (9th Cir. 2011) (reciting and applying *Boyle* elements).

F.4th at 1110 (defendants' inapposite citations to government-contractor cases involving design defect claims were insufficient to establish colorable contractor defense to failure-to-warn claims). The Court should again reject Defendants' recycled arguments on the colorable federal defense element of federal-officer removal, as it should Defendants' arguments on the other required elements. As it has now done multiple times in similar cases, the Court should recognize that Defendants have not established the requirements for federal-officer removal.

## II. Defendants' First Amendment Defenses Do Not Change This Court's Holding That the People's Claims Are Not Removable Under *Grable*.

This Court has already rejected Defendants' attempt to remove the People's state-law public nuisance claims under *Grable*. *Oakland*, 969 F.3d at 904–07. Undeterred, Defendants again contend the cases should have been removed under *Grable* because they assert vague First Amendment defenses. Defendants did not properly preserve that argument, and regardless, it fails on the merits. The Court should reject Defendants' efforts to further prolong removal proceedings by raising at the eleventh hour a theory they failed to preserve.

The *Grable* doctrine defines the "'special and small category' of state-law claims that arise under federal law for purposes of [28 U.S.C.] § 1331 'because federal law is a necessary element of the . . . claim for relief.'" *Oakland*, 969 F.3d at 904 (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)). "'Only a few cases' have ever fallen into this narrow category." *San Mateo*

*III*, 32 F.4th at 746 (quoting *Oakland*, 969 F.3d at 904). In that category, federal-question jurisdiction exists over a state-law claim "if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)).

## A. Defendants Waived Their First Amendment Theory of *Grable* Jurisdiction.

In the first appeal in this case, this Court concluded that because "the Cities' state-law claim[s] d[id] not raise a substantial federal issue, the claim[s] d[id] not fit within the slim category *Grable* exemplifies." *Oakland*, 969 F.3d at 907 (cleaned up). Defendants now contend that holding does not control because this Court "did not address" their First Amendment *Grable* theory. *See* 1-SER-68 n.12 (emphasis removed). But the Court did not address that theory because, as Defendants acknowledged in the district court, they *did not assert* it as a basis for *Grable* jurisdiction in the original remand proceedings in the district court or on appeal. *See id.* Defendants waived the First Amendment *Grable* argument by failing to raise it.

Under the law of the case doctrine, "a party cannot offer up successively different legal or factual theories that could have been presented in a prior request for review." *Sec. Inv. Prot. Corp. v. Vigman*, 74 F.3d 932, 937 (9th Cir. 1996). By failing to raise an issue it could have presented in a prior appeal, including new arguments pertaining to issues determined in that prior appeal, a party "waive[s] its

right to assert the [issue] in subsequent proceedings." *In re Cellular 101, Inc.*, 539 F.3d 1150, 1155 (9th Cir. 2008); *see also Munoz v. Cnty. of Imperial*, 667 F.2d 811, 817 (9th Cir. 1982).

This Court's holding that the People's state-law claims are not removable under *Grable* is the law of the case. Even though Defendants' NORs reference First Amendment defenses among "significant federal issues" they say support *Grable* jurisdiction, 5-ER-1048, ¶ 32; 5-ER-1146, ¶ 32, Defendants chose not to raise their First Amendment theory in the initial remand proceedings before the district court or in the first appeal. That choice was intentional: Defendants presented their First Amendment defenses as an alternative basis for affirming the district court's order *dismissing* the People's cases for failure to state a claim, but did *not* assert those defenses as a basis for federal subject-matter jurisdiction—until *after* the Court reversed the order denying remand. *See* 2019 Br. at 52–55.

Defendants tried to justify this failure by asserting that "Plaintiffs' theory of the case plainly rested on Defendants' production and sale of fossil fuels." *See* 1-SER-68 n.12. As explained above, *supra* Part I.C.2.b, that is not true. The People have always challenged Defendants' wrongful promotion of their fossil-fuel products while concealing their knowledge of those products' dangers. *See, e.g.*, 5-ER-1075–76, ¶¶ 5–7; 6-ER-1188, ¶¶ 5–7. Defendants' NORs recognize as much, contending that "whether Defendants can be held liable consistent with the First

Amendment for purportedly 'engag[ing] in large-scale, sophisticated advertising and public relations campaigns' that Plaintiff alleges misled the public" constitutes a "significant federal issue[]" for purposes of *Grable* jurisdiction. 5-ER-1048, ¶ 32 (quoting 5-ER-1075, ¶ 5); 5-ER-1146, ¶ 32 (quoting 6-ER-1188, ¶ 5)).

Defendants had every opportunity to present their First Amendment theory of *Grable* jurisdiction in the initial remand proceedings. By electing not to do so, Defendants waived their right to assert that theory in this appeal. *See Munoz*, 667 F.2d at 817; *In re Cellular 101, Inc.*, 539 F.3d at 1155; *see also United States v. Arreguin*, 735 F.3d 1168, 1178 (9th Cir. 2013) (argument waived that government "never raised . . . during the initial district court proceedings, nor in its brief on the first appeal," but sought to raise in second appeal).[17]

To the extent the Court does not find that Defendants have waived their First Amendment theory of *Grable* jurisdiction, Defendants should be estopped from relitigating the issue, as they already litigated and lost that exact theory before the Third Circuit in *Hoboken II*, 45 F.4th at 709. *See supra* Part I.B.[18]

---

[17] Although the district court did not address the People's argument below that Defendants waived their First Amendment theory, this Court reviews *de novo* a district court's order granting remand, *Corona-Contreras v. Gruel*, 857 F.3d 1025, 1028 (9th Cir. 2017), and may affirm on any ground supported by the record, *see Pentax Corp. v. Myhra*, 72 F.3d 708, 710 (9th Cir. 1995).

[18] The Third Circuit's opinion is a "final judgment" for estoppel purposes, notwithstanding Defendants' pending petition for a writ of certiorari, *see supra* n.1. *See Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 882 (9th Cir. 2007) ("[A] final

### B. Defendants' First Amendment Theory of *Grable* Jurisdiction Is Meritless.

In any case, Defendants' First Amendment jurisdiction theory is meritless. Defendants contend the People's claims are removable under *Grable* "because they necessarily incorporate federal elements imposed by the First Amendment." OB 47. The district court correctly rejected this theory, *see* 1-ER-9–11, as has every other court to consider it. *See Hoboken II*, 45 F.4th at 709; *Annapolis*, 2022 WL 4548226, at *9–10; *Delaware*, 578 F. Supp. 3d at 632–34; *Hoboken I*, 558 F. Supp. 3d at 204–05; *Connecticut*, 2021 WL 2389739, at *10.

Defendants contend that "where nominally state-law tort claims target speech on matters of public concern like climate change, the First Amendment injects affirmative federal-law elements into the plaintiff's cause of action," making the claims removable under *Grable.* OB 48–49. The Third Circuit disagreed:

> [T]hough the First Amendment limits state laws that touch speech, those limits do not extend federal jurisdiction to every such claim. State courts routinely hear libel, slander, and misrepresentation cases involving matters of public concern. The claims here arise under state law, and their elements do not require resolving substantial, disputed federal questions.

*Hoboken II*, 45 F.4th at 709.[19]

---

judgment retains its collateral estoppel effect, if any, while pending appeal."); 18A Charles Alan Wright et al., FED. PRAC. & PROC. § 4433 (3d ed. 2022).

[19] These decisions comport with the consensus of other courts of appeals concluding under the well-pleaded complaint rule that First Amendment defenses cannot give

Courts in this circuit have likewise rejected the notion that First Amendment defenses provide a basis for removal. For example, in *California v. Sky Tag, Inc.*, the defendants argued that state-law claims brought by the Los Angeles City Attorney to "compel removal of illegal supergraphic signs" were removable under *Grable* because the action would impose a prior restraint on the defendants' speech. No. CV 11-8638 ABC (PLAx), 2011 WL 13223655, at *1 (C.D. Cal. Nov. 29, 2011). The court rejected that theory as "no different than other First Amendment defenses that courts have repeatedly found did not support removal jurisdiction." *Id.* at *3 (collecting cases); *see also Nevada v. Culverwell*, 890 F. Supp. 933, 937 (D. Nev. 1995) (no removal of state-law claims based on First Amendment defense); *Shinoff v. Larkins*, No. 07CV2202 WQH (WMc), 2008 WL 564728, at *2 (S.D. Cal. Mar. 3, 2008) (same). As *Sky Tag* court explained, even if the City would eventually bear the burden of justifying a prior restraint,

> [t]hat does not . . . transform Defendants' defense of a First
> Amendment violation into an element of the City's claims. As

---

rise to federal subject-matter jurisdiction. *See, e.g.*, *Bullitt Cnty. Fiscal Ct. v. Newsome*, 60 F.3d 828, 1995 WL 408183, at *1–2 (6th Cir. 1995) (holding that action to enjoin violation of ordinance enforceable under state statute was improperly removed where "[f]ederal law [wa]s implicated only by way of a defense-that the statute is unconstitutional under the First Amendment . . ."); *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 965 (10th Cir. 1996) ("[T]he First Amendment as a defense does not constitute a basis for federal jurisdiction, for it is fundamental that anticipation of a defense cannot confer jurisdiction." (cleaned up)); *Troung v. Am. Bible Soc'y*, 171 F. App'x 898, 898 (2d Cir. 2006) ("First Amendment defenses . . . cannot establish federal question jurisdiction.").

> the master of its complaint, the City has not alleged any First
> Amendment claim, and, if it must eventually demonstrate that an
> injunction in this case would comport with the First Amendment,
> it need only do so in response to Defendants' objection.

2011 WL 13223655, at *3. The same obtains here. The burden-shifting framework
that applies to certain First Amendment defenses does not "inject[] affirmative
federal-law elements," OB 48–49, into the People's California-law public nuisance
claims. And it does not "transform" a First Amendment defense "into an element of
the [plaintiff's state-law] claims." *Sky Tag*, 2011 WL 13223655, at *3.

Defendants' theory would mean state-law complaints would be removable
under Section 1441(a) whenever a defendant might assert a First Amendment
defense. But "since 1887 it has been settled law that a case may not be removed to
federal court on the basis of a federal defense . . . even if the defense is anticipated
in the plaintiff's complaint." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for
S. Cal.*, 463 U.S. 1, 14 (1983). And because "[t]he well-pleaded complaint rule
applies to the original jurisdiction of the district courts as well as to their removal
jurisdiction," *id.* at 10 n.9, Defendants' theory would mean a plaintiff could bring a
state-law defamation action against a non-diverse defendant in federal district court,
asserting federal-question jurisdiction based on allegations that the defendant acted
with "actual malice." *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964).
That has never been the law.

Defendants agree that "most state-law misrepresentation claims are not subject to removal," but they insist the People's claims are different because they were brought by public entities in state courts and involve speech on matters of public concern—namely, climate change. OB 53–55. But this Court has already determined that the People's public nuisance claims "do[] not raise a substantial question of federal law." *Oakland*, 969 F.3d at 906–07. Moreover, every court to consider Defendants' First Amendment/*Grable* theory has rejected it. *See Hoboken II*, 45 F.4th at 709; *Annapolis*, 2022 WL 4548226, at *9–10; *Delaware*, 578 F. Supp. 3d at 632–34; *Hoboken I*, 558 F. Supp. 3d at 204–05; *Connecticut*, 2021 WL 2389739, at *10.

Defendants cite no case that premised federal subject-matter jurisdiction on a defendant's asserted First Amendment rights. Five of Defendants' cited cases were litigated in state courts and came before the U.S. Supreme Court on direct appeal or by writ of certiorari. *See Milkovich v. Lorain J. Co.*, 497 U.S. 1, 10 (1990) (Ohio); *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 771 (1986) (Pennsylvania); *Sullivan*, 376 U.S. at 263–64 (Alabama); *Time, Inc. v. Hill*, 385 U.S. 374, 378–80 (1967) (New York); *Nat'l Rev., Inc. v. Mann*, 140 S. Ct. 344, 345 (2019) (Alito, J., dissenting from denial of certiorari) (District of Columbia). Two were filed in federal court on diversity grounds. *See Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 48 (1988); *Snyder v. Phelps*, 580 F.3d 206, 210 (4th Cir. 2009), *aff'd*, 562 U.S. 443 (2011). Two

others were filed in federal court, with subject-matter jurisdiction premised on claims brought under federal statutes. *See U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 920 (3d Cir. 1990) (Lanham Act claim); *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2462 (2018) (claim under 42 U.S.C. § 1983).[20] Another pair were removed pursuant to the bankruptcy removal statutes, 28 U.S.C. §§ 1334(b) and 1452, and discussed the First Amendment in adjudicating motions to dismiss or for judgment on the pleadings. *See In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 511 F. Supp. 2d 742, 761–64, 809–15 (S.D. Tex. 2005); *Gorran v. Atkins Nutritionals, Inc.*, 464 F. Supp. 2d 315, 322–23, 325–29 (S.D.N.Y. 2006).[21] These decisions shed no light on the questions before this Court.

Defendants cite two other inapposite cases. The first, *Gully v. First National Bank*, had nothing to do with the First Amendment, and held that the plaintiff's claim should be remanded because it did not arise under federal law. 299 U.S. 109, 114–

---

[20] *Janus* was originally filed by the Governor of Illinois in federal court, seeking to declare unconstitutional a state statute requiring public employees to subsidize unions. 138 S. Ct. at 2459–60, 2462. The district court dismissed the Governor's complaint for lack of subject-matter jurisdiction because "the only federal issue identified" was whether the statute violated the First Amendment, an "issue [that] would arise only as a defense to an anticipated suit by the [defendant] Unions," and for lack of standing. *Rauner v. Am. Fed. of State, Cnty., & Mun. Emps., Council 31*, No. 15-C-1235, 2015 WL 2385698, at *2–3 (N.D. Ill. May 19, 2015). However, the court allowed three public employees to intervene in the suit because they asserted an independent basis for subject-matter jurisdiction and had standing. *Id.* at *4–5.

[21] *See* Notice of Removal, *Gorran v. Atkins Nutritionals, Inc.*, No. 05-06033-SHF, Dkt. 1, at *1 (S.D. Fla. Bankr. Ct. Nov. 1, 2005).

18 (1936). The Court explained that for federal-question jurisdiction to exist, "a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Id.* at 112. It was already true in 1936 that "[b]y unimpeachable authority, a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States because prohibited thereby." *Id.* at 116. Defendants contort *Gully* to support removal of the People's state-law claims based on "Defendants' First Amendment rights." *See* OB 51, 55. But they merely describe a federal defense, which more than a century of jurisprudence forecloses as a basis for removal under the well-pleaded complaint rule. *See Franchise Tax Bd.*, 463 U.S. at 13–14.

The second, *Ortiz v. University of Medicine & Dentistry of New Jersey*, further supports the People's position. No. 08-2669 (JLL), 2009 WL 737046 (D.N.J. Mar. 18, 2009). Federal jurisdiction was proper in *Ortiz* because the plaintiff's state-law claim "expressly" alleged that the *defendant* violated the *plaintiff's* First Amendment rights, such that her "stated cause of action require[d] proof of violation of federal law as an essential element to recovery." *See id.* at *1, 3, 5, 7. The case says nothing about the *defendant's* First Amendment rights, and "[n]othing in *Ortiz* stands for the broad proposition that any constitutional issue, no matter how it is raised, is sufficient to invoke federal jurisdiction." *Hoboken I*, 558 F. Supp. 3d at 205.

Finally, Defendants cite three of this Court's precedents to support their *Grable* theory, but concede that "none of these cases considered the role that the First Amendment plays in the removal analysis." *See* OB 52–53 (citing *Knievel v. ESPN*, 393 F.3d 1068, 1073–78 (9th Cir. 2005) (considering First Amendment issues in context of motion to dismiss); *Lieberman v. Fieger*, 338 F.3d 1076, 1079–82 (9th Cir. 2003) (same at summary judgment); *Church of Scientology of Cal. v. Adams*, 584 F.2d 893, 899 (9th Cir. 1978) (affirming dismissal for lack of personal jurisdiction and "observ[ing] that first amendment protections are better developed in the context of substantive defenses on the merits rather than at the initial jurisdictional stage")). None of those cases support Defendants here.

As the district court recognized, Defendants "cite no authority" to support their First Amendment theory of *Grable* jurisdiction. 1-ER-10 (quotation omitted). The Court need not revisit its rejection of *Grable* jurisdiction in *Oakland*. If it does consider Defendants' belated and baseless First Amendment theory on the merits, it should reject that argument.

## **CONCLUSION**

The Court should affirm the district court's order granting remand. Because this Court's prior decisions in *Oakland*, *San Mateo III*, and *Honolulu II* control, the People respectfully request summary disposition without oral argument.

Dated:  May 5, 2023                         Respectfully submitted,

                                            */s/ Victor M. Sher*

Barbara J. Parker, City Attorney            Victor M. Sher
Maria Bee, Chief Assistant City             Matthew K. Edling
Attorney                                    Katie H. Jones
Zoe M. Savitsky, Supervising Deputy         Martin D. Quiñones
City Attorney                               Quentin C. Karpilow
**Oakland Office of the City Attorney**     Naomi D. Wheeler
One Frank Ogawa Plaza, 6th Floor            Anthony M. Tohmé
Oakland, CA 94612                           **Sher Edling LLP**
Telephone: (510) 238-3601                   100 Montgomery St., Suite 1410
                                            San Francisco, CA 94104
*Counsel for People of the State of*        (628) 231-2500
*California and City of Oakland*

David Chiu, City Attorney                   Michael Rubin
Yvonne R. Meré, Chief Deputy City           Barbara J. Chisholm
Attorney                                    Corinne Johnson
Sara J. Eisenberg, Chief of Complex         **Altshuler Berzon LLP**
and Affirmative Litigation                  177 Post Street, Suite 300
Ronald H. Lee, Deputy City Attorney         San Francisco, CA 94108
Robb W. Kapla, Deputy City Attorney         Telephone: (415) 421-7151
Alexander J. Holtzman, Deputy City
Attorney                                    *Counsel for Plaintiffs-Appellees*
**San Francisco City Attorney's Office**
Fox Plaza, 7th Floor, 1390 Market
Street
San Francisco, CA 94102
Telephone: (415) 554-4748

*Counsel for the People of the State of*
*California and City & County of San*
*Francisco*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(g), I certify that:

This brief complies with the length limits permitted by Ninth Circuit Rules 32-1(a) and 32-2(b). This brief contains 12,992 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), and is filed by separately represented parties.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word 2016, Times New Roman 14-point font.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 5, 2023, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/      Victor M. Sher*

# STATUTORY ADDENDUM

Pursuant to Ninth Circuit Rule 28-2.7, this addendum includes pertinent statutes, reproduced verbatim:

**Statutes**                                                                   **Page(s)**

Cal. Civ. Code § 3479 ........................................................................57

Cal. Civ. Code § 3480 ........................................................................57

Cal. Civ. Code § 3491 ........................................................................57

Cal. Civ. Code § 3494 ........................................................................57

Cal. Civ. Proc. Code § 731 ................................................................57

28 U.S.C. § 1291 ................................................................................58

28 U.S.C. § 1331 ................................................................................58

28 U.S.C. § 1334(b) ...........................................................................58

28 U.S.C. § 1441(a) ...........................................................................58

28 U.S.C. § 1442 ................................................................................59

28 U.S.C. § 1446(b)(1) ......................................................................59

28 U.S.C. § 1447(d) ...........................................................................60

28 U.S.C. § 1452 ................................................................................60

28 U.S.C. § 1605(a)(2) .......................................................................60

28 U.S.C. § 1653 ................................................................................61

42 U.S.C. § 1983 ................................................................................61

**Cal. Civ. Code § 3479. Nuisance; what constitutes**

Anything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway, is a nuisance.

**Cal. Civ. Code § 3480. Public nuisance**

A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal.

**Cal. Civ. Code § 3491. Remedies; public**

The remedies against a public nuisance are:
1. Indictment or information;
2. A civil action; or,
3. Abatement.

**Cal. Civ. Code § 3494. Abatement; parties authorized**

A public nuisance may be abated by any public body or officer authorized thereto by law.

**Cal. Civ. Proc. Code § 731. Nuisance; action to abate, damages; parties authorized to sue; public nuisance**

An action may be brought by any person whose property is injuriously affected, or whose personal enjoyment is lessened by a nuisance, as defined in Section 3479 of the Civil Code, and by the judgment in that action the nuisance may be enjoined or abated as well as damages recovered therefor. A civil action may be brought in the name of the people of the State of California to abate a public nuisance, as defined in Section 3480 of the Civil Code, by the district attorney or county counsel of any county in which the nuisance exists, or by the city attorney of any town or city in which the nuisance exists. Each of those officers shall have concurrent right to bring an action for a public nuisance existing within a town or city. The district attorney, county

counsel, or city attorney of any county or city in which the nuisance exists shall bring an action whenever directed by the board of supervisors of the county, or whenever directed by the legislative authority of the town or city.

## 28 U.S.C. § 1291. Final decisions of district courts

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

## 28 U.S.C. § 1331.  Federal question

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

.
## 28 U.S.C. § 1334(b). Bankruptcy cases and proceedings

. . .

(b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

. . .

## 28 U.S.C. § 1441(a). Removal of civil actions

(a) Generally.--Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

. . .

## 28 U.S.C. § 1442. Federal officers or agencies sued or prosecuted

(a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

> (2) A property holder whose title is derived from any such officer, where such action or prosecution affects the validity of any law of the United States.

> (3) Any officer of the courts of the United States, for or relating to any act under color of office or in the performance of his duties;

> (4) Any officer of either House of Congress, for or relating to any act in the discharge of his official duty under an order of such House.

. . .

## 28 U.S.C. § 1446(b)(1).  Procedure for removal of civil actions

. . .

(b) Requirements; generally.—

> (1) The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

. . .

**28 U.S.C. § 1447(d). Procedure after removal generally**

. . .

(d) An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise.

. . .

**28 U.S.C. § 1452. Removal of claims related to bankruptcy cases**

(a) A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

(b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title.

**28 U.S.C. § 1605(a)(2). General exceptions to the jurisdictional immunity of a foreign state**

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

. . .

(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;

. . .

**28 U.S.C. § 1653. Amendment of pleadings to show jurisdiction**

Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts.

**42 U.S.C. § 1983.  Civil action for deprivation of rights**

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.