Nos. 22-16810, 22-16812

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

CITY OF OAKLAND *et al.*,
*Plaintiffs-Appellees*,

v.

B.P., P.L.C., *et al.*,
*Defendants-Appellants.*

On Appeal from the U.S. District Court for the Northern District of California
Nos. 17-cv-06011-WHA, 17-cv-06012-WHA
Hon. William Alsup, District Judge

## BRIEF FOR AMICI CURIAE STATES OF CALIFORNIA, CONNECTICUT, DELAWARE, HAWAIʻI, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, NEW JERSEY, NEW MEXICO, NEW YORK, OREGON, PENNSYLVANIA, RHODE ISLAND, WASHINGTON, AND THE DISTRICT OF COLUMBIA IN SUPPORT OF PLAINTIFFS-APPELLEES

ROB BONTA
Attorney General of California
EDWARD H. OCHOA
Senior Assistant Attorney General
LAURA J. ZUCKERMAN
Supervising Deputy Attorney General

HEATHER M. LEWIS
ERIN GANAHL
Deputy Attorneys General
CALIFORNIA DEPARTMENT OF JUSTICE

1515 Clay Street, 20th Floor
P.O. Box 70550
Oakland, CA 94612-0550
Telephone: (510) 879-1008
Fax: (510) 622-2270
Email: Heather.Lewis@doj.ca.gov
*Attorneys for Amicus State of California*
[*Additional Counsel Listed
on Signature Page*]

# TABLE OF CONTENTS

**Page**

IDENTITY AND INTEREST OF AMICI ................................................... 1

ARGUMENT ............................................................................................ 3

    I.    The Municipalities' State-Law Claims Fall Well Within
           Traditional Areas of State Regulation........................................ 5

    II.    The Municipalities' Claims are Properly Adjudicated in
           State Court................................................................................ 10

          A.    The Companies Cannot Establish Federal Officer
                  Jurisdiction.................................................................... 10

                1.    The Companies Misconceive the
                        Legal Standard Governing the "Nexus"
                        Requirement for Federal Officer Jurisdiction .... 11

                2.    The Companies Cannot Establish Federal
                        Officer Jurisdiction by Rewriting the
                        Municipalities' Complaints ................................ 13

          B.    The Companies' First Amendment Theory of
                    Removal Would Expand the Scope of *Grable*
                    Jurisdiction Beyond Recognition................................. 18

    CONCLUSION........................................................................................ 22

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Am. Fuel & Petrochemical Mfrs. v. O'Keeffe*,
    903 F.3d 903 (9th Cir. 2018) .................................................. 1, 7

*Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy
(U.S.A.) Inc.*,
    405 F. Supp. 3d 947 (D. Colo. 2019) ............................... 3, 5, 13

*Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy
(U.S.A.) Inc.*, 25 F.4th 1238 (10th Cir. 2022)............................3

*BP P.L.C. v. Mayor & City Council of Baltimore*,
    141 S. Ct. 1532 (2021)......................................................... 2, 14

*California v. ARC Am. Corp.*,
    490 U.S. 93 (1989).....................................................................1

*Cal. Chamber of Com. v. State Air Res. Bd.*,
    10 Cal. App. 5th 604 (Cal. Ct. App. 2017)................................9

*Cascade Bicycle Club v. Puget Sound Reg'l Council*,
    306 P.3d 1031 (Wash. Ct. App. 2013) ......................................9

*Caterpillar Inc. v. Williams*,
    482 U.S. 386 (1987)........................................................... 12, 20

*Chae v. SLM Corp.*,
    593 F.3d 936 (9th Cir. 2010) ....................................................7

*City & Cnty. of Honolulu v. Sunoco LP*,
    Nos. 20-163, 20-470, 2021 WL 531237
    (D. Haw. Feb. 12, 2021) ...................................................... 3, 16

*City & Cnty. of Honolulu v. Sunoco LP*,
    39 F.4th 1101 (9th Cir. 2022) ................................... 3, 4, 13, 17

ii

## TABLE OF AUTHORITIES
## (continued)

Page

*City of Annapolis v. BP P.L.C.*,
    Nos. 21-772, 21-1323, 2022 WL 4548226
    (D. Md. Sept. 29, 2022) ........................................................................ 5, 18

*City of Hoboken v. Exxon Mobil Corp.*,
    558 F. Supp. 3d 191 (D.N.J. 2021) ........................................... 3, 5, 13, 18

*City of Hoboken v. Chevron Corp.*,
    45 F.4th 699 (3d Cir. 2022) ...................................................... 3, 5, 18, 20

*City of Oakland v. BP PLC*,
    969 F.3d 895 (9th Cir. 2020) ................................................................ 2, 4

*City of Philadelphia v. Lead Indus. Ass'n, Inc.*
    994 F.2d 112 (3d Cir. 1993) ........................................................................9

*Connecticut v. Exxon Mobil Corp.*,
    No. 3:20-CV-1555, 2021 WL 2389739
    (D. Conn. June 2, 2021) ........................................................ 5, 13, 14, 18

*Cnty. of San Mateo v. Chevron Corp.*,
    294 F. Supp. 3d 934 (N.D. Cal. 2018) ........................................... 2, 5, 13

*Cnty. of San Mateo v. Chevron Corp.*,
    960 F.3d 586 (9th Cir. 2020) ........................................................ 2, 4, 11

*Cnty. of San Mateo v. Chevron Corp.*,
    32 F.4th 733 (9th Cir. 2022) ................................................................ 2, 4

*Delaware v. BP Am. Inc.*,
    578 F. Supp. 3d 618 (D. Del. 2022) ............................................... 3, 5, 18

*Dunaway v. Purdue Pharma L.P.*,
    391 F. Supp. 3d 802 (M.D. Tenn. 2019) ........................................... 6, 22

*Edenfield v. Fane*,
    507 U.S. 761 (1993) ......................................................................................1

# TABLE OF AUTHORITIES
## (continued)

Page

*Empire Healthchoice Assurance, Inc. v. McVeigh*,
547 U.S. 677 (2006)............................................................ 19, 21

*Florida Lime & Avocado Growers, Inc. v. Paul*,
373 U.S. 132 (1963).................................................................7

*Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Tr.*
463 U.S. 1 (1983)....................................................................2

*Goncalves ex rel. Goncalves v. Rady Child.'s Hosp. San Diego*,
865 F.3d 1237 (9th Cir. 2017) .................................................. 12

*Gorran v. Atkins Nutritionals, Inc.*,
464 F. Supp. 2d 315 (S.D.N.Y. 2006) .................................... 20

*Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*,
545 U.S. 308 (2005)....................................................... *passim*

*Gunn v. Minton*
568 U.S. 251 (2013)............................................................... 22

*Huron Portland Cement Co. v. Detroit*,
362 U.S. 440 (1960).................................................................7

*Hustler Mag., Inc. v. Falwell*,
485 U.S. 46 (1988)................................................................ 20

*In re Enron Corp. Secs., Derivative & "ERISA" Litig.*,
511 F. Supp. 2d 742 (S.D. Tex. 2005).................................... 20

*Isaacson v. Dow Chem. Co.*,
517 F.3d 129 (2d Cir. 2008) ................................................... 12

*Jefferson Cnty., Ala. v. Acker*,
527 U.S. 423 (1999).............................................................. 12

# TABLE OF AUTHORITIES
## (continued)

Page

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) ................................................ 12, 13, 16, 17

*Massachusetts v. Exxon Mobil Corp.*,
462 F. Supp. 3d 31 (D. Mass. 2020) .................................................... 5, 13

*Mayor & City Council of Baltimore v. BP P.L.C.*,
388 F. Supp. 3d 538 (D. Md. 2019) ............................................................. 2

*Mayor & City Council of Baltimore v. BP P.L.C.*,
952 F.3d 452 (4th Cir. 2020) ................................................ 2, 13, 14, 15

*Mayor & City Council of Baltimore v. BP P.L.C*,
31 F.4th 178 (4th Cir. 2022) ......................................................... 2, 5, 13

*Merrell Dow Pharms., Inc. v. Thompson*,
478 U.S. 804 (1986) ................................................................................ 12

*Milkovich v. Lorain J. Co.*,
497 U.S. 1 (1990) .............................................................................. 20, 21

*Minnesota v. Am. Petroleum Inst.*,
No. 20-1636, 2021 WL 1215656 (D. Minn. Mar. 31, 2021) .............. 3, 14

*Minnesota v. Am. Petroleum Inst.*,
63 F.4th 703 (8th Cir. 2023) ......................................................... 3, 5, 13

*N.Y. Times Co. v. Sullivan*,
376 U.S. 254 (1964) .......................................................................... 20, 21

*Nevada v. Bank of Am. Corp.*,
672 F.3d 661 (9th Cir. 2012) ....................................................... 6, 13, 21

*New Eng. Power Generators Ass'n v. Dep't of Env't Prot.*,
105 N.E.3d 1156 (Mass. 2018) ................................................................. 9

## TABLE OF AUTHORITIES
### (continued)

Page

*Ortiz v. Univ. of Med. & Dentistry of N.J.*,
   No. 2:08-CV-02669, 2009 WL 737046
   (D.N.J. Mar. 18, 2009) ............................................................. 19

*People v. ConAgra Grocery Prods. Co.*,
   17 Cal. App. 5th 51 (Cal. Ct. App. 2017) .................................. 9

*Phila. Newspapers, Inc. v. Hepps*,
   475 U.S. 767 (1986) ........................................................... 20, 21

*Rhode Island v. Chevron Corp.*,
   393 F. Supp. 3d 142 (D.R.I. 2019) ............................................ 3

*Rhode Island v. Shell Oil Prods. Co.*,
   979 F.3d 50 (1st Cir. 2020) ............................................. *passim*

*Rhode Island v. Shell Oil Prods. Co.*,
   35 F.4th 44 (9th Cir. 2022) ........................................................ 3

*Rocky Mountain Farmers Union v. Corey*,
   730 F.3d 1070 (9th Cir. 2013) ................................................... 7

*Rocky Mountain Farmers Union v. Corey*,
   913 F.3d 940 (9th Cir. 2019) ..................................................... 5

*Snyder v. Phelps*,
   580 F.3d 206 (4th Cir. 2009) ................................................... 20

*Snyder v. Phelps*,
   562 U.S. 443 (2011) ................................................................. 20

*Sunoco LP v. City & Cnty. of Honolulu*,
   598 U.S. ___ 2023 WL 3046227 (Apr. 24, 2023) ...................... 5

*Syngenta Crop Prot., Inc. v. Henson*,
   537 U.S. 28 (2002) ............................................................ 10, 17

# TABLE OF AUTHORITIES
## (continued)

Page

*Time, Inc. v. Hill*,
   385 U.S. 374 (1967)................................................................. 20

*U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*,
   898 F.2d 914 (3d Cir. 1990) .................................................... 20

*United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*,
   550 U.S. 330 (2007).....................................................................1

*Watson v. Philip Morris Cos.*,
   551 U.S. 142 (2007)................................................................. 11

**STATUTES**

28 United States Code
   § 1331 ....................................................................................... 18
   § 1442 .........................................................................................4

California Public Resources Code
   §§ 71150–71160 ...........................................................................8

Hawaiʻi Revised Statutes
   §§ 171-19, 237D-6.5(b)(5)) .........................................................8

**RULES**

Federal Rules of Appellate Procedure
   Rule 29(a)(2)...............................................................................1

**OTHER AUTHORITIES**

U.S. Global Change Research Program,
   *Fourth National Climate Assessment*, Vol. II (2018)..................8

**IDENTITY AND INTEREST OF AMICI**

The States of California, Connecticut, Delaware, Hawai'i, Maryland, Massachusetts, Michigan, Minnesota, New Jersey, New Mexico, New York, Oregon, Pennsylvania, Rhode Island, Washington, and the District of Columbia ("Amici States")[1] have a unique interest in preserving their sovereign authority to enforce state law in their state courts to protect their residents, and the authority of their state courts to develop and enforce requirements of state law. States are "vested with the responsibility of protecting the health, safety, and welfare of [their] citizens." *United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 342 (2007). This sovereign responsibility includes "prevent[ing] the deception of consumers," *California v. ARC Am. Corp.*, 490 U.S. 93, 101 (1989), and addressing the causes and effects of climate change within their borders, *see Am. Fuel & Petrochemical Mfrs. v. O'Keeffe*, 903 F.3d 903, 913 (9th Cir. 2018). States also have a "substantial" interest in "ensuring the accuracy of commercial information in the marketplace." *Edenfield v. Fane*, 507 U.S. 761, 769 (1993). And "considerations of comity" should make federal courts "reluctant to snatch cases which a State has brought from the courts of that State, unless some

---

[1] Amici States file this brief as of right pursuant to Rule 29(a)(2) of the Federal Rules of Appellate Procedure.

1

clear rule demands it." *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Tr.*, 463 U.S. 1, 21 n.22 (1983).

No "clear rule" requires this Court to "snatch" this state-law case from California's state courts, where Plaintiffs-Appellees the City of Oakland and the City and County of San Francisco ("Municipalities") chose to file their cases, and where the cases belong. *Franchise Tax Bd.*, 463 U.S. at 21 n.22. Here, the Defendant-Appellant fossil fuel companies ("Companies") seek a ruling that would divest state courts of authority to hear a broad class of state common-law actions. Such a ruling would significantly interfere with Amici States' interest in protecting their residents from harm by enforcing state laws in state courts, while substantially expanding removal jurisdiction well beyond what the Supreme Court has allowed in cases where only state-law causes of action are pleaded.

All federal courts of appeals that have considered the Companies' removal arguments have rejected those arguments, and this court should do the same.[2]

---

[2] *Cnty. of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934 (N.D. Cal. 2018) (*San Mateo I*), *aff'd in part, appeal dismissed in part*, 960 F.3d 586 (9th Cir. 2020) (*San Mateo II*), *vacated and remanded on other grounds*, 141 S.Ct. 2666 (May 24, 2021), *aff'd*, 32 F.4th 733 (9th Cir. 2022) (*San Mateo III*), *cert. denied*, 2023 WL 3046226 (Apr. 24, 2023) (No. 22-495); *City of Oakland v. BP PLC*, 969 F.3d 895 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2776 (2021); *Mayor & City Council of Baltimore v. BP P.L.C.*, 388 F. Supp. 3d 538 (D. Md. 2019) (*Baltimore I*), as amended (June 20, 2019), *aff'd in part, appeal dismissed in part*, 952 F.3d 452 (4th Cir. 2020) (*Baltimore II*), *vacated and remanded on other grounds*, 141 S. Ct. 1532 (2021) (*Baltimore III*), *aff'd*, 31 F.4th 178 (4th Cir. 2022) (*Baltimore IV*),

Federal courts have consistently remanded state-law actions that were removed on the theory that they touch upon issues with national dimensions—including in many cases where substantially the same defendants raised substantially the same arguments as they do here. *See supra*, n.2. This Court should affirm the district court's remand order.

## ARGUMENT

The Municipalities filed separate suits in California state court in 2017, alleging that the Companies engaged in a decades-long campaign to mislead the public about the known dangers of fossil fuel combustion. Each complaint alleged a single cause of action for public nuisance under state law. The Companies have

---

cert. denied, 2023 WL 3046224 (Apr. 24, 2023) (No. 22-361); *Rhode Island v. Chevron Corp.*, 393 F. Supp. 3d 142 (D.R.I. 2019) (*Rhode Island I*), *aff'd sub nom. Rhode Island v. Shell Oil Prods. Co.*, 979 F.3d 50 (1st Cir. 2020) (*Rhode Island II*), *vacated and remanded on other grounds*, 141 S. Ct. 2666 (2021), *aff'd*, 35 F.4th 44 (1st Cir. 2022) (*Rhode Island III*), *cert. denied*, 2023 WL 3046229 (Apr. 24, 2023) (No. 22-524); *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 405 F. Supp. 3d 947 (D. Colo. 2019) (*Boulder I*), *aff'd*, 25 F.4th 1238 (10th Cir. 2022) (*Boulder II*), *cert. denied*, 2023 WL 3046222 (Apr. 24, 2023) (No. 21-1550); *City & Cnty. of Honolulu v. Sunoco LP*, Nos. 20-163, 20-470, 2021 WL 531237 (D. Haw. Feb. 12, 2021) (*Honolulu I*), *aff'd*, 39 F.4th 1101 (*Honolulu II*), *cert. denied*, 2023 WL 3046227 (Apr. 24, 2023) (No. 22-523); *Minnesota v. Am. Petroleum Inst.*, No. 20-1636, 2021 WL 1215656 (D. Minn. Mar. 31, 2021) (*Minnesota I*), *aff'd*, 63 F.4th 703 (8th Cir. 2023) (*Minnesota II*); *City of Hoboken v. Exxon Mobil Corp.*, 558 F. Supp. 3d 191 (D.N.J. 2021) (*Hoboken I*), *aff'd sub nom. City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022) (*Hoboken II*), *cert. petition filed* (Mar. 1, 2023) (No. 22-821); *Delaware v. BP Am. Inc.*, 578 F. Supp. 3d 618 (D. Del. 2022), *aff'd sub nom. City of Hoboken*, 45 F.4th 699, *cert. petition filed* (Mar. 1, 2023) (No. 22-821).

spent the subsequent years unsuccessfully arguing that these state-law cases belong in federal court. This Court has unequivocally rejected the bases for removal that the Companies have advanced. *See San Mateo II*, 960 F.3d at 598–603 (9th Cir. 2020) (rejecting federal officer jurisdiction); *Honolulu II*, 39 F.4th at 1106 (9th Cir. 2022) (same); *City of Oakland v. BP PLC*, 969 F.3d 895, 907 (9th Cir. 2020) (rejecting removal under *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005)); *San Mateo III*, 32 F.4th at 746–48 (9th Cir. 2022) (same).

The Companies correctly acknowledge this Court has already rejected most of the grounds raised in their notice of removal, which may not be relitigated here. Defendants-Appellants' Opening Brief ("Br.") at 5–6 nn.2–4. Nevertheless, in a last-ditch attempt to keep these cases out of state court, where they belong, the Companies continue to advance jurisdictional theories under 28 U.S.C. § 1442(a)(1) (federal officer jurisdiction) and *Grable*, 545 U.S. 308. If anything, however, these theories are even more plainly meritless than the others that this Court has already rejected. The Companies' federal officer theory rests on fundamental mischaracterizations of the Municipalities' claims, a tactic this Court and numerous others have repeatedly and resoundingly rejected,[3] and which the

---

[3] *See Honolulu II*, 39 F.4th at 1111–12 (rejecting the defendants' attempt to "recharacterize the [plaintiffs'] claims from deceptive practices to activities on federal enclaves" and noting it "it would require the most tortured reading of the

Supreme Court has declined to review.[4] And, similarly, the Companies' *Grable* argument fails because the Municipalities' public nuisance claims do not necessarily include the First Amendment as an element.[5] The district court correctly rejected every basis for federal jurisdiction asserted by the Companies. *See* Excerpts of Record ("ER") at 1-ER-9 to -15. This Court should affirm.

## I. THE MUNICIPALITIES' STATE-LAW CLAIMS FALL WELL WITHIN TRADITIONAL AREAS OF STATE REGULATION

Protection of citizens' "health and welfare" is a field that states have traditionally occupied under their police power authority. *Rocky Mountain Farmers Union v. Corey*, 913 F.3d 940, 945–46 (9th Cir. 2019). States and their subdivisions therefore have an interest in maintaining that authority, and in

---

Complaints to find jurisdiction") (internal quotations removed); *Minnesota II*, 63 F.4th at 715–16; *Baltimore IV*, 31 F.4th 178, 233–34, 234 n.23; *Rhode Island II*, 979 F.3d at 59–60; *Hoboken I*, 558 F. Supp. 3d at 208; *Massachusetts v. Exxon Mobil Corp.*, 462 F. Supp. 3d 31, 47 (D. Mass. 2020); *Boulder I*, 405 F. Supp. 3d at 976–77; *San Mateo I*, 294 F. Supp. 3d at 939; *Connecticut v. Exxon Mobil Corp.*, No. 3:20-CV-1555, 2021 WL 2389739, at *11 (D. Conn. June 2, 2021), appeal filed, No. 21-1446 (2d Cir. June 8, 2021).

[4] *See Sunoco LP v. City & Cnty. of Honolulu*, 598 U.S. ___, 2023 WL 3046227 (Apr. 24, 2023) (No. 22-523) (denying petition for writ of certiorari).

[5] Every district court to have considered this argument in the context of the parallel climate cases has rejected it. *See Hoboken I*, 558 F. Supp. 3d at 204, *aff'd*, 45 F.4th 699, 709 (3d Cir. 2022); *Delaware v. BP America, Inc.*, 578 F. Supp. 3d 618, 632–34 (D. Del. 2022), *aff'd sub nom. City of Hoboken*, 45 F.4th 699, 709 (3d Cir. 2022); *Connecticut v. Exxon Mobil Corp.*, No. 3:20-CV-1555, 2021 WL 2389739, at *10 (D. Conn. June 2, 2021); *City of Annapolis v. BP P.L.C.*, Nos. 21-772, 21-1323, 2022 WL 4548226, at *9 (D. Md. Sept. 29, 2022).

preserving state courts' ability to adopt and enforce requirements of state common law in furtherance of that authority. The Companies, however, seek a ruling that would threaten to displace that power and divest state courts of their traditional authority to adjudicate traditional state-law claims like the ones at issue here.

Attempts to usurp state-court jurisdiction in cases involving states' or their subdivisions' exercise of police powers should be met with skepticism, because "sovereign protection from removal arises in its most powerful form" where, as here, a governmental plaintiff brings an action in state court to enforce its own laws. *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir. 2012) (citation omitted). This is true even when state-law claims address issues of national importance, such as climate change. The opioid crisis is one prominent and tragic example. Multiple states and municipalities, including several of the Amici States, have brought state-law actions against the manufacturers, distributors, and retailers of prescription opioids, and numerous federal courts have remanded those cases to state court. *See Dunaway v. Purdue Pharma L.P.*, 391 F. Supp. 3d 802, 813 (M.D. Tenn. 2019) (collecting cases). These courts noted that the fact that opioid abuse is an issue of national importance which is addressed, to some extent, by federal law "in no way undermines the power of states to craft independent responses that do not rely on federal law to impose liability." *Id.*

The fact that the Municipalities' claims fall squarely within fields of traditional state regulation underscores the fundamental flaws in the Companies' sweeping theories of federal jurisdiction. The Municipalities seek redress for the Companies' alleged history of false and misleading advertising, disinformation, and deceptive promotion of dangerous products. Protecting consumers and citizens from the impacts of such deceptive commercial conduct is plainly an area in which states are traditionally authorized to regulate pursuant to their broad sovereign police powers to protect residents' health, safety, and general welfare. *See, e.g.*, *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 150 (1963) (noting that states have "traditional power to enforce . . . regulations designed for the protection of consumers"); *Chae v. SLM Corp.*, 593 F.3d 936, 944 (9th Cir. 2010) (same).

The same is true with respect to protection of residents and consumers from the adverse effects of products and activities that cause environmental harms—including harms from climate change. This is also an area traditionally entrusted to states as part of their police powers. *O'Keeffe*, 903 F.3d at 913; *see also Huron Portland Cement Co. v. Detroit*, 362 U.S. 440, 442 (1960) ("Legislation designed to free from pollution the very air that people breathe clearly falls within the exercise of even the most traditional concept of what is compendiously known as the police power."); *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1107 (9th Cir. 2013) (upholding California's low-carbon fuel standards).

Exercising their longstanding police powers to mitigate environmental harms, Amici States have taken substantial steps to prepare the adaptation measures required to survive in a warming world. For example, California's Assembly Bill 1482 of 2015 mandated preparation of a state climate adaptation strategy. Cal. Pub. Res. Code §§ 71150–71160. Hawaiʻi's Act 117 of 2015, recognizing that the State's beaches "are disappearing at an alarming rate," authorized the use of transient accommodation tax revenues for beach conservation and restoration. 2015 Haw. Sess. Laws Act 117 (codified at Haw. Rev. Stat. §§ 171-19, 237D-6.5(b)(5)). Such adaptation measures addressing these local harms will come at huge costs to state and local governments. *See*, *e.g.*, U.S. Global Change Research Program, *Fourth National Climate Assessment*, Vol. II, at 1321 (2018) ("Nationally, estimates of adaptation costs range from tens to hundreds of billions of dollars per year."); *see also id*. at 485 (in the first three months of 2017, Spokane County, Washington, spent $2 million more than its yearly budget for road maintenance due to flooding from rapid snowmelt); *id*. at 760 (as of 2016, the city of Charleston, South Carolina had spent $235 million to respond to increased flooding).

Given states' traditional police power authority to protect their citizens' health and welfare, including, importantly, from environmental harms, it is no surprise that state courts have also been active in addressing legal questions

relating to climate change and its impacts. *See, e.g.*, *Cal. Chamber of Com. v. State Air Res. Bd.*, 10 Cal. App. 5th 604, 614 (Cal. Ct. App. 2017) (upholding California's creation of a cap-and-trade emissions reduction system); *New Eng. Power Generators Ass'n v. Dep't of Env't Prot.*, 105 N.E.3d 1156, 1167 (Mass. 2018) (upholding regulations limiting GHG emissions by electricity producers promulgated pursuant to state statute); *Cascade Bicycle Club v. Puget Sound Reg'l Council*, 306 P.3d 1031, 1041 (Wash. Ct. App. 2013) (holding that environmental impact statement under the Washington State Environmental Policy Act sufficiently identified and analyzed alternatives and mitigation capable of attaining the greenhouse gas emission limits set by state statute).

More broadly, adjudication of state common-law claims, such as those at issue here, is the traditional province of state courts. State courts are therefore the most appropriate venue for tort claims such as Municipalities' claims, especially where the ability of a state or its subdivisions to protect the health and welfare of its citizens is at issue. "Federalism concerns require that [federal courts] permit state courts to decide whether and to what extent they will expand state common law." *City of Philadelphia v. Lead Indus. Ass'n, Inc.*, 994 F.2d 112, 123 (3d Cir. 1993). This is so even—or especially—in cases of complex and widespread environmental contamination, even when there is federal regulation on the same or a related issue. *See, e.g.*, *People v. ConAgra Grocery Prods. Co.*, 17 Cal. App. 5th

51, 169 (Cal. Ct. App. 2017) (state court judgment against several lead paint companies under a public nuisance theory). State courts have been, and continue to be, the proper venue for environmental tort cases such as this. To hold otherwise would upset the balance of power between state and federal courts. *See, e.g.*, *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) ("Due regard for the rightful independence of state governments requires that federal courts scrupulously confine their own jurisdiction to the precise limits which the statute has defined.") (alteration omitted).

States therefore play a vital role in protecting their citizens' health and welfare from environmental harms, including the local effects of climate change, and state courts are entrusted with, and are uniquely capable of, adjudicating state common-law claims like the ones brought by the Municipalities. The Companies' arguments would, if adopted, upset the balance between federal and state courts and cause substantial damage to state interests.

## II. THE MUNICIPALITIES' CLAIMS ARE PROPERLY ADJUDICATED IN STATE COURT

### A. The Companies Cannot Establish Federal Officer Jurisdiction

The Companies have repeatedly argued, without success, that these cases and others like them are removable on grounds similar to those advanced here. These theories are based on a distortion of the Municipalities' (and the other plaintiffs') claims, and should be rejected.

To establish federal officer jurisdiction, a defendant must (1) identify actions that it "t[ook] pursuant to a federal officer's directions," (2) "demonstrate a causal nexus" between those government-directed actions and the conduct for which the defendant is being sued, and (3) raise "a colorable federal defense."[6] *San Mateo II*, 960 F.3d at 598 (citations omitted). The district court was correct to find that this Court's precedents applying this framework leave "no room" to conclude that federal officer jurisdiction exists here. 1-ER-13 to -14. In particular, the Companies cannot possibly satisfy the second prong of the test, because there is no nexus between any federal officer's directions and the corporate conduct the Municipalities challenge.

### 1. The Companies Misconceive the Legal Standard Governing the "Nexus" Requirement for Federal Officer Jurisdiction

The Companies distort the legal standard for the federal officer jurisdiction nexus requirement, which mandates that federal officer jurisdiction arises only if defendants show they were "acting under" federal officers in "carrying out the 'act[s]' *that are the subject of the petitioners' complaint*." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007) (emphasis added) (quoting 28 U.S.C. § 1442).

---

[6] Although the Companies fail to meet any of the four requirements for federal officer jurisdiction, the Amici States focus herein on the requirement that a defendant must demonstrate a causal nexus between the government-directed actions and the challenged conduct.

Instead of addressing how the deception claims that are the subject of the Municipalities' complaints give rise to federal officer jurisdiction, the Companies attempt to shift the focus of the nexus requirement to conduct other than that which was challenged by the Municipalities. *See, e.g.*, Br. at 2, 12, 36–40. It is well established that the nexus standard requires that "[t]he 'very act' that forms the basis for" the plaintiff's complaint was "performed under the direction of federal officers." *Goncalves ex rel. Goncalves v. Rady Child.'s Hosp. San Diego*, 865 F.3d 1237, 1245 (9th Cir. 2017) (alteration omitted) (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1124 (9th Cir. 2014)); *see also, e.g.*, *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 431 (1999) (requiring a "'causal connection' between the charged conduct and asserted official authority").

The Companies attempt to shift the focus of the nexus requirement away from the Municipalities' allegations and onto their "theory of the case." Br. at 15, 36. But the Companies overlook the fundamental principle that "the *plaintiff* [is] the master of the claim," *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (emphasis added), and that "[j]urisdiction may not be sustained on a theory that the plaintiff has not advanced." *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 809 n.6 (1986). In other words, while courts have credited a defendant's explanation of how government-directed conduct is connected to "[t]he action that Plaintiffs challenge," *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137–38 (2d Cir.

2008),[7] the plaintiff, not the defendant, still determines what the challenged conduct is. *See, e.g.*, *Baltimore II*, 952 F.3d at 467 n.10 (rejecting defendants' reframing of plaintiff's claims). To conclude otherwise—and sustain federal-court jurisdiction based on a defendant's contorted "theory of the case"—would render the nexus requirement toothless. Moreover, allowing a defendant to concoct a theory of the case that is untethered to the plaintiff's actual claims, thereby taking cases out of the able hands of the state courts, would contravene the presumption in favor of state court jurisdiction, which is especially strong in cases such as this that involve traditional police powers. *See Nevada v. Bank of Am. Corp.*, 672 F.3d at 676.

### 2. The Companies Cannot Establish Federal Officer Jurisdiction by Rewriting the Municipalities' Complaints

The Companies not only misconceive the applicable legal standard; they also distort the Municipalities' claims themselves, a tactic this Court and numerous others have repeatedly rejected.[8]

---

[7] See also *Leite*, 749 F.3d at 1124 ("[A] nexus exists here because the very act that forms the basis of plaintiffs' claims . . . is an act that [defendant] contends it performed under the direction of the Navy.").

[8] *See Honolulu II*, 39 F.4th at 1111–12; *Minnesota II*, 63 F.4th at 715–16; *Baltimore IV*, 31 F.4th at 233–34, 234 n.23; *Rhode Island II*, 979 F.3d at 59–60; *Hoboken I*, 558 F. Supp. 3d at 208; *Massachusetts v. Exxon Mobil Corp.*, 462 F. Supp. 3d at 47; *Boulder I*, 405 F. Supp. 3d at 976–77; *San Mateo I*, 294 F. Supp. 3d at 939; *Connecticut v. Exxon Mobil Corp.*, 2021 WL 2389739, at *11.

Here, while the Companies' arguments "may have the flavor of federal officer involvement in [their] business, . . . that mirage only lasts until one remembers what [the People] [are] alleging," *Rhode Island II*, 979 F.3d at 59–60: that the Companies failed to warn of the known risks of fossil fuel combustion, misled the public regarding those risks, promoted their products' unlimited use, and engaged in a multi-decade disinformation campaign to prop up the market for their products, *e.g.*, 6-ER-1203 to -1216.

Instead of addressing how the conduct challenged by the Municipalities— namely, the Companies' *deceptive promotion* of their products—was taken at the behest of federal officers, the Companies contend that the Municipalities have asserted claims based on fossil fuel *production* and greenhouse gas *emissions*. *See* Br. at 2, 12, 36–40. As courts have found in the other climate-deception cases,[9] the Municipalities here do not seek to hold the Companies liable for producing or emitting greenhouse gases, to regulate future emissions, or to limit the Companies'

---

[9] *See Baltimore III*, 141 S. Ct. at 1535–36 ("[The plaintiff] sued various energy companies for promoting fossil fuels while allegedly concealing their environmental impacts."); *Baltimore II*, 952 F.3d at 467 (identifying "the source of tort liability" as "the concealment and misrepresentation of [fossil fuel] products' known dangers," together with the "simultaneous promotion of their unrestrained use"); *Minnesota I*, 2021 WL 1215656, at *10 ("[T]he State's claims are rooted not in the Defendants' fossil fuel production, but in its alleged misinformation campaign."); *Connecticut*, 2021 WL 2389739, at *13 ("Connecticut's claims seek redress for the manner by which ExxonMobil has interacted with consumers in Connecticut, not the impacts of climate change.").

production of fossil fuels. *See* 5-ER-1078, 6-ER-1190. As the Fourth Circuit
recognized in rejecting the Companies' removal theory in parallel circumstances,
"the Complaint clearly seeks to challenge the promotion and sale of fossil fuel
products without warning and abetted by a sophisticated disinformation
campaign." *Baltimore II*, 952 F.3d at 467. Although, as in *Baltimore II*, "there are
many references to fossil fuel production in the Complaint, . . . these references
only serve to tell a broader story about how the unrestrained production and use of
Defendants' fossil fuel products contribute to greenhouse gas pollution." *Id*. And
the fact that fossil fuel production is part of the overall story does not change the
source of the tort liability asserted:

> Although this story is necessary to establish the avenue of [the
> Municipalities'] climate change-related injuries, *it is not the source of
> tort liability*. Put differently, [the Municipalities do] not merely allege
> that Defendants contributed to climate change and its attendant harms
> by producing and selling fossil fuel products; it is the concealment and
> misrepresentation of the products' known dangers—and simultaneous
> promotion of their unrestrained use—that allegedly drove consumption,
> and thus greenhouse gas pollution, and thus climate change.

*Id*. (emphasis added).

Thus, in light of Baltimore's *actual* claims, the Fourth Circuit "agree[d] with
the district court's conclusion that the relationship between Baltimore's claims and
any federal authority over a portion of certain Defendants' production and sale of
fossil fuel products is too tenuous to support removal under § 1442." *Id.* at 467–68.
The Companies' arguments that federal officer jurisdiction exists here fail for

precisely the same reason. That is, the Companies cannot establish federal officer jurisdiction by rewriting the complaints or contorting the Municipalities' claims into something that may give rise to federal jurisdiction.

The Companies' attempt to focus the Court's attention on their "theory of the case" to take these cases out of the hands of the state courts is similarly unavailing. The Companies argue that their production of fossil fuels was, in certain circumstances, undertaken at the behest of the federal government. Br. at 18–33. But the Court cannot credit a theory of the case that is unconnected to the Municipalities' actual claims. The nexus requirement for federal officer jurisdiction simply does not give the Companies license to contort the Municipalities' claims into something they are not. *See Honolulu I*, 2021 WL 531237 at *7 ("[I]f Defendants had it their way, they could assert *any* theory of the case, however untethered to the claims of Plaintiffs, because this Court must 'credit' that theory.") (emphasis in original).

The Companies rely primarily on *Leite*, 749 F.3d 1117, in seeking to shift focus away from the Municipalities' claims onto their own theory of the case, but that case does not support the Companies' theory. In *Leite*, the plaintiffs accused the defendant of failing to warn about the hazards of asbestos. 749 F.3d at 1119–20. Because the defendant argued that it provided specific warnings *required by* the federal government, this Court concluded that the defendant had established

16

a causal connection to the "basis of plaintiffs' claims" for the purposes of federal officer removal. *Id*. at 1124. By contrast, here, the Companies' alleged deceptive statements and activities were not required by the federal government; indeed, the Companies never even attempt to argue that they were. It is therefore simply not the law that this Court must credit a defendant's theory no matter how attenuated it is from the plaintiff's claims. Doing so would contravene the Supreme Court's directive that removal statutes should be "strictly construed." *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002).

Once the Companies' distorted version of the Municipalities' claims is put aside, it becomes clear that their arguments for federal officer jurisdiction are meritless. The Municipalities allege that the Companies engaged in a misinformation campaign about the harmful effects of their products on the earth's climate. None of the relationships with the federal government identified by the Companies come close to mandating such conduct. Thus, "[t]here is simply no nexus between anything for which [the Municipalities] seek[] damages and anything the oil companies allegedly did at the behest of a federal officer." *Rhode Island II*, 979 F.3d at 60. As this Court aptly explained in *Honolulu II*, "[t]his case is about whether oil and gas companies misled the public about dangers from fossil fuels . . . . [i]t is not about companies that acted under federal officers[.]" 39 F.4th at 1113.

## B. The Companies' First Amendment Theory of Removal Would Expand the Scope of *Grable* Jurisdiction Beyond Recognition

In a final attempt to revive their unsuccessful arguments that state-law public nuisance claims necessarily raise a disputed and substantial federal issue, the Companies now argue that the Municipalities' claims arise under federal law because they may implicate First Amendment interests.[10] Courts have rejected this theory in the four climate deception cases in which the Companies have raised it, and this Court should do the same.[11]

A state-law claim may be said to "arise under" federal law for the purposes of 28 U.S.C. § 1331 if the state-law claim "necessarily raise[s] a stated a federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). *Grable* jurisdiction exists for a "special and small

---

[10] This Court previously held that the Municipalities' "state-law claim for public nuisance fails to raise a substantial federal question," rejecting the Companies' argument that federal jurisdiction exists because the Municipalities' claims implicate federal interests, including energy policy, national security, and foreign policy. 4-ER-845 to -846.

[11] *See Hoboken I*, 558 F. Supp. 3d at 204–05, *aff'd*, 45 F.4th 699, 709 (3d Cir. 2022); *Delaware v. BP America Inc.*, 578 F. Supp. 3d 618, 632–34 (D. Del. 2022), *aff'd sub nom. City of Hoboken*, 45 F.4th 699, 709 (3d Cir. 2022); *Connecticut v. Exxon Mobil Corp.*, No. 3:20-CV-1555, 2021 WL 2389739, at *10 (D. Conn. June 2, 2021); *City of Annapolis v. BP P.L.C.*, Nos. 21-772, 21-1323, 2022 WL 4548226, at *9–10 (D. Md. Sept. 29, 2022).

category" of cases where resolution of a question of federal law would be controlling in numerous other cases, and does not generally extend to claims that are "fact-bound and situation-specific." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699, 701 (2006).

As the district court noted, the Companies fail to cite any authority for the proposition that the First Amendment converts state-law claims potentially implicating free speech interests into federal causes of action for purposes of assessing jurisdiction under *Grable*. 1-ER-10. The Companies cite a single unpublished decision from the federal district court in New Jersey, which held that removal was appropriate because the plaintiff's state-law claim necessarily raised First Amendment issues under *Grable*. *Ortiz v. Univ. of Med. & Dentistry of N.J.*, No. 2:08-CV-02669, 2009 WL 737046 (D.N.J. Mar. 18, 2009). But that case is easily distinguishable: the complaint in that case alleged violations of the U.S. Constitution as predicates for its state-law claims. *Id.* at *1 ("Her Complaint expressly states that [defendant] violated the United States Constitution in describing her [state-law] claims.").

In the absence of relevant removal authority, the Companies instead rely upon cases that were either fully litigated to a state's supreme court before reaching the

United States Supreme Court,[12] or that were in federal court under diversity jurisdiction or other grounds.[13] As these cases demonstrate, "[s]tate courts routinely hear libel, slander, and misrepresentation cases involving matters of public concern," and though the First Amendment may limit state laws that touch speech, "those limits do not extend federal jurisdiction to every such claim." *Hoboken II*, 45 F.4th at 709. But most significantly, the First Amendment constitutes only a potential defense, and, except in circumstances not present here, is not an essential element of a plaintiff's claims. *See Snyder v. Phelps*, 562 U.S. 443, 451 (2011) ("The Free Speech Clause of the First Amendment . . . can serve as a defense in state tort suits, including suits for intentional infliction of emotional distress."). And a potential defense cannot give rise to federal jurisdiction. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). Indeed, the Companies appear to concede that point. Br. at 41 n.12.

--------

[12] *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 770–71 (1986); *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 256 (1964); *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 6–10 (1990); *Time, Inc. v. Hill*, 385 U.S. 374, 379–80 (1967).

[13] *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 48 (1988) (diversity jurisdiction); *Snyder v. Phelps,* 580 F.3d 206, 210 (4th Cir. 2009) (diversity jurisdiction), *aff'd*, 562 U.S. 443 (2011); *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 920 (3d Cir. 1990) (pendant jurisdiction over state-law claims); *Gorran v. Atkins Nutritionals, Inc.*, 464 F. Supp. 2d 315, 322–23 (S.D.N.Y. 2006) (state-law complaint removed to federal bankruptcy court after defendant initiated bankruptcy proceedings), *aff'd*, 279 F. App'x 40 (2d Cir. 2008); *In re Enron Corp. Secs., Derivative & "ERISA" Litig.*, 511 F. Supp. 2d 742, 756–58 (S.D. Tex. 2005) (removed pursuant to bankruptcy removal statutes).

Even if the First Amendment could convert a state-law claim into a federal one under *Grable* (which it cannot), the Companies cite no authority indicating that the First Amendment would inject affirmative federal elements into state-law public nuisance claims, instead citing cases that address the constitutional limits of defamation and libel claims. *See Phila. Newspapers*, 475 U.S. 767, 768 (defamation); *N.Y. Times Co.*, 376 U.S. 254, 256 (1964) (libel); *Milkovich*, 497 U.S. 1, 3 (1990) (libel). Though the Companies claim that these affirmative First Amendment elements "extend[] outside of the defamation context to a wide range of state-law tort causes of action," the Companies fail to identify any cases that import First Amendment elements into public nuisance claims. Br. at 49–50.

The Companies' novel theory of *Grable* jurisdiction would extend federal jurisdiction to virtually any state-law claims that might implicate speech, a result that is clearly at odds with the Supreme Court's intention to extend *Grable* jurisdiction to only a "slim category" of cases. *See Empire Healthchoice*, 547 U.S. at 701. And one at odds with this Court's admonition that "sovereign protection from removal arises in its most powerful form" when a state or municipality brings a state-law claim in its own state courts to protect its residents. *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 676. Such an expansion of federal jurisdiction would undoubtedly "disturb the balance of federal and state judicial responsibilities," divesting state courts of the authority to develop and decide important issues of

state law. *Gunn v. Minton*, 568 U.S. 251, 255 (2013). The Municipalities'

complaints allege that the Companies caused or contributed to a public nuisance by

affirmatively promoting fossil fuel usage and denying climate science, while

having full knowledge that their fossil fuels would contribute to climate change

and cause the types of harms that the Municipalities seek to remedy with their

lawsuits. States routinely bring state-law actions in state court to address both the

type of conduct (deceptive representations made to consumers and the public) and

the types of harms (harms to the health, safety, and welfare of residents, as well as

physical harms within state borders) alleged within the complaints. Even when

such cases involve issues of a national dimension, those issues do not override the

authority of states to enforce, and of state courts to hear, state-law claims. *See, e.g.*,

*Dunaway v. Purdue Pharma L.P.*, 391 F. Supp. 3d 802, 813 (M.D. Tenn. 2019)

("[T]he fact that opioid abuse is an issue of national importance that is addressed,

to some degree, by federal law in no way undermines the power of states to craft

independent responses that do not rely on federal law to impose liability.").

## CONCLUSION

For the reasons above, Amici States urge this Court to affirm the district

court's order remanding these actions to state court.

Dated: May 12, 2023                     Respectfully submitted,


WILLIAM TONG                            ROB BONTA
*Attorney General*                      *Attorney General*
*State of Connecticut*                  *State of California*
165 Capitol Avenue                      EDWARD H. OCHOA
Hartford, CT 06106                      Senior Assistant Attorney General


KATHLEEN JENNINGS
*Attorney General*                      By: */s/ Heather M. Lewis*
*State of Delaware*                     HEATHER M. LEWIS
Delaware Department of Justice          ERIN GANAHL
820 N. French Street                    Deputy Attorneys General
Wilmington, DE 19801                    LAURA J. ZUCKERMAN
                                        Supervising Deputy Attorney General
                                        *Attorneys for Amicus Attorney General,*
ANNE E. LOPEZ                           *State of California*
*Attorney General*
*State of Hawaiʻi*
425 Queen Street
Honolulu, HI 96813


ANTHONY G. BROWN                        DANA NESSEL
*Attorney General*                      *Attorney General*
*State of Maryland*                     *State of Michigan*
200 Saint Paul Place                    P.O. Box 30212
Baltimore, MD 21202                     Lansing, Michigan 48909


ANDREA JOY CAMPBELL                     KEITH ELLISON
*Attorney General*                      *Attorney General*
*Commonwealth of Massachusetts*         *State of Minnesota*
One Ashburton Place                     102 State Capitol
Boston, MA  02108                       75 Rev. Dr. Martin Luther King Jr. Blvd.
                                        St. Paul, MN 55155


                                        *(Counsel listing continues on next page)*


23

MATTHEW J. PLATKIN
*Attorney General*
*State of New Jersey*
Richard J. Hughes Justice Complex
25 Market Street
Trenton, NJ 08625

MICHELLE A. HENRY
*Attorney General*
*Commonwealth of Pennsylvania*
Pennsylvania Office of Attorney General
Strawberry Square, 16th Floor
Harrisburg, PA 17120

RAÚL TORREZ
*Attorney General*
*State of New Mexico*
408 Galisteo Street
Santa Fe, NM 87501

PETER F. NERONHA
*Attorney General*
*State of Rhode Island*
150 South Main Street
Providence, RI 02903

LETITIA JAMES
*Attorney General*
*State of New York*
28 Liberty Street
New York, NY 10005

ROBERT W. FERGUSON
*Attorney General*
*State of Washington*
P.O. Box 40100
Olympia, WA 98504

ELLEN F. ROSENBLUM
*Attorney General*
*State of Oregon*
1162 Court Street N.E.
Salem, OR 97301

BRIAN L. SCHWALB
*Attorney General*
*District of Columbia*
400 6th Street, NW, Suite 8100
Washington, DC 20001

## CERTIFICATE OF SERVICE

I certify that on May 12, 2023, I electronically filed the foregoing document

with the Clerk of the Court of the United States Court of Appeals for the Ninth

Circuit by using the appellate CM/ECF system.  I certify that all other participants

in this case are registered CM/ECF users and that service will be accomplished

by the appellate CM/ECF system.


Dated:  May 12, 2023                    */s/ Heather M. Lewis*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 22-16810, 22-16812

I am the attorney or self-represented party.

**This brief contains** | 5,682 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◯ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

⦿ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [          ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Heather M. Lewis | **Date** | May 12, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**        *Rev. 12/01/22*