Nos. 22-16810, 22-16812

IN THE

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰 𝔣𝔬𝔯 𝔱𝔥𝔢 𝔑𝔦𝔫𝔱𝔥 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

_____

CITY OF OAKLAND, a Municipal Corporation, and THE PEOPLE OF
THE STATE OF CALIFORNIA, acting by and through the Oakland
City Attorney Barbara J. Parker; CITY AND COUNTY OF SAN
FRANCISCO, a Municipal Corporation, and THE PEOPLE OF THE
STATE OF CALIFORNIA, acting by and through the San Francisco
City Attorney Dennis J. Herrera,

*Plaintiffs-Appellees*,

v.

B.P. P.L.C., a public limited company of England and Wales;
CHEVRON CORPORATION, a Delaware corporation; CONOCOPHIL-
LIPS COMPANY, a Delaware corporation; EXXON MOBIL CORPORA-
TION, a New Jersey corporation; ROYAL DUTCH SHELL PLC, a pub-
lic limited company of England and Wales; and DOES 1 through 10,

*Defendants-Appellants.*

_____

On Appeal from the United States District Court,
Northern District of California, Case Nos. 3:17-cv-06011, 3:17-cv-06012
(The Honorable William H. Alsup)

_____

## APPELLANTS' REPLY BRIEF

_____

JOSHUA D. DICK
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
(415) 393-8331

THOMAS G. HUNGAR
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
(202) 887-3784

THEODORE J. BOUTROUS, JR.
ANDREA E. NEUMAN
WILLIAM E. THOMSON
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071-3197
(213) 229-7000
tboutrous@gibsondunn.com

*Counsel for Defendant-Appellant Chevron Corporation.*
[*Additional counsel listed on signature page*]

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................1

ARGUMENT .......................................................................................3

    I.    These Actions Are Removable Under The Federal-
        Officer-Removal Statute ...........................................................3

        A.    Defendants' Expanded Evidentiary Record Is
            Properly Before This Court .............................................3

        B.    Defendants Are Not Precluded From Raising
            Their Federal-Officer-Removal Arguments ..................6

        C.    Defendants Acted Under The Direction Of
            Federal Officers ..............................................................12

        D.    Defendants' Federal Activities "Relate To"
            Plaintiffs' Lawsuits ........................................................20

        E.    Defendants Have Raised "Colorable Federal
            Defenses." .......................................................................29

    II.    Plaintiffs' Claims Necessarily Raise Disputed And
        Substantial Issues Under The First Amendment And,
        Accordingly, Are Removable Under *Grable* ..........................33

CONCLUSION ................................................................................38

# TABLE OF AUTHORITIES

**Page(s)**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................4

*Baker v. Atl. Richfield Co.*,
  962 F.3d 937 (7th Cir. 2020) ........................................14, 29

*Broussard v. Huntington Ingalls, Inc.*,
  2020 WL 2744583 (E.D. La. May 27, 2020)........................13

*Cabalce v. Thomas E. Blanchard & Assocs., Inc.*,
  797 F.3d 720 (9th Cir. 2015) ........................................15, 30

*City & County of Honolulu v. Sunoco LP*,
  39 F.4th 1101 (9th Cir. 2022)......................................3, 7, 8

*City of Annapolis, Md. v. BP P.L.C.*,
  2021 WL 2000469 (D. Md. May 19, 2021) ..........................12

*City of Hoboken v. Chevron Corp.*,
  45 F.4th 699 (3d Cir. 2022) ..................................................26

*City of New York v. Chevron Corp.*,
  993 F.3d 81 (2d Cir. 2021)............................................25, 26

*City of Oakland v. BP PLC*,
  969 F.3d 895 (9th Cir. 2020) ........................................37, 38

*Cohens v. Virginia*,
  19 U.S. (6 Wheat.) 264 (1821) .............................................10

*Cohn v. Petsmart, Inc.*,
  281 F.3d 837 (9th Cir. 2002) ............................................4, 5

*Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharm., Inc.*,
  996 F.3d 243 (4th Cir. 2021) ................................................33

*County of San Mateo v. Chevron Corp.*,
  32 F.4th 733 (9th Cir. 2022)..........................................3, 20

ii

*Dart Cherokee Basin Op. Co. v. Owens*,
574 U.S. 81 (2014)..................................................................4

*Dias v. Elique*,
436 F.3d 1125 (9th Cir. 2006) ............................................7

*France.com, Inc. v. French Republic*,
992 F.3d 248 (4th Cir. 2021) ............................................24

*Fry v. Napoleon Cmty. Schools*,
580 U.S. 154 (2017).............................................................24

*Gospel Missions of Am. v. City of Los Angeles*,
328 F.3d 548 (9th Cir. 2003) .............................................27

*Gully v. First Nat'l Bank*,
299 U.S. 109 (1936).............................................................33

*Gunn v. Minton*,
568 U.S. 251 (2013).............................................................36

*Jean Alexander Cosms., Inc. v. L'Oreal USA, Inc.*,
458 F.3d 244 (3d Cir. 2006) ................................................9

*Jefferson Cnty. v. Acker*,
527 U.S. 423 (1999).............................................................30

*Juliana v. United States*,
947 F.3d 1159 (9th Cir. 2020) ...........................................31

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) ...........................................29

*Mashiri v. Dep't of Educ.*,
724 F.3d 1028 (9th Cir. 2013) ...........................................10

*McBride Cotton & Cattle Corp. v. Veneman*,
290 F.3d 973 (9th Cir. 2002) .............................................31

*Montana v. United States*,
440 U.S. 147 (1979)...............................................................9

*In re Nat'l Prescription Opiate Litig.*,
   2023 WL 166006 (N.D. Ohio Jan. 12, 2023) .........................................33

*OBB Personenverkehr AG v. Sachs*,
   577 U.S. 27 (2015)...............................................................21, 22, 23, 27

*Ortiz v. Univ. of Med. & Dentistry of N.J.*,
   2009 WL 737046 (D.N.J. Mar. 18, 2009) .............................................35

*Papp v. Fore-Kast Sales Co.*,
   842 F.3d 805 (3d Cir. 2016)..................................................................33

*Parklane Hosiery Co. v. Shore*,
   439 U.S. 322 (1979)...........................................................................9, 10

*Pharm. Care Mgmt. Ass'n v. District of Columbia*,
   522 F.3d 443 (D.C. Cir. 2008)................................................................9

*Phila. Newspapers, Inc. v. Hepps*,
   475 U.S. 767 (1986)........................................................................36, 37

*Resolution Trust Corp. v. Keating*,
   186 F.3d 1110 (9th Cir. 1999) ..............................................................11

*Saudi Arabia v. Nelson*,
   507 U.S. 349 (1993)...............................................................................23

*Sawyer v. Foster Wheeler LLC*,
   860 F.3d 249 (4th Cir. 2017) ................................................................13

*Schmitt v. War Emergency Pipelines, Inc.*,
   72 F. Supp. 156 (E.D. Ark. 1947) ........................................................18

*Shell Oil Co. v. United States*,
   751 F.3d 1282 (Fed. Cir. 2014).............................................................17

*Stross v. NetEase, Inc.*,
   2020 WL 5802419 (C.D. Cal. Aug. 20, 2020) ...................................8, 11

*Syverson v. Int'l Bus. Machines Corp.*,
   472 F.3d 1072 (9th Cir. 2007) ................................................................6

iv

*Wang v. Asset Acceptance, LLC*,
 680 F. Supp. 2d 1122 (N.D. Cal. 2010) ....................................5

*Watson v. Philip Morris Cos.*,
 551 U.S. 142 (2007).............................12, 13, 15, 16, 18, 20

*Willingham v. Morgan*,
 395 U.S. 402 (1969).............................................................5, 6

*Yee v. City of Escondido*,
 503 U.S. 519 (1992)................................................................34

*Yniguez v. State*,
 975 F.2d 646 (9th Cir. 1992) ...............................................34

## Statutes

28 U.S.C. § 1442(a)(1)..............................................................3, 21

28 U.S.C. § 1605(a)(2)..................................................................23

28 U.S.C. § 1653 ............................................................................5

## Treatises

Restatement (Second) of Judgments § 28 cmt. b .....................10

Restatement (Second) of Judgments § 29, cmt. i ......................9

14C Wright & Miller, Fed. Prac. & Proc. Juris. § 3733.............5

# INTRODUCTION

Plaintiffs' far-reaching claims in California state court seek to hold Defendants liable for the alleged physical effects of global climate change. Plaintiffs seek damages for local injuries that they allege are caused by the cumulative impact of emissions emanating from every State in the Nation and every country in the world over decades. These allegations are inherently and necessarily federal in nature. In an effort to avoid federal jurisdiction, however, Plaintiffs argue that this Court should ignore their actual claims, ignore their alleged injuries, and ignore their requested relief, focusing instead solely on their allegations of "concealment" and "misrepresentation." This effort must fail.

While a plaintiff may be the master of its complaint, it cannot compel the court to ignore that complaint's plain language, nor can it strip the federal courts of jurisdiction by pretending away essential elements of its claims. Federal-officer removal requires courts to consider whether the defendant's federally directed conduct relates to the plaintiff's alleged injury. Here, Plaintiffs allege that their injuries all stem from global climate change, which, they contend, was substantially caused by Defend-

ants' production, promotion, and sale of fossil fuels. And because the record here demonstrates that a significant portion of Defendants' production and sale activities—including evidence of the production of large amounts of specialized, noncommercial grade fuels for the U.S. military, which must meet detailed specifications to fulfill unique military needs—were undertaken at the direction of federal officers, removal is appropriate.

Even if Plaintiffs' claims were somehow limited to Defendants' alleged "concealment" and "misrepresentations," *Grable* removal also is appropriate because Plaintiffs' claims necessarily incorporate federal elements under the First Amendment. Plaintiffs object that Defendants point to no cases exactly matching Plaintiffs' unusual and sprawling claims, but that is not the relevant standard. Defendants have satisfied all four elements for removal under *Grable*, and removal is accordingly appropriate.[1]

---

[1] Defendants preserve for potential future review the additional grounds for removal identified in their Opening Brief. *See* OB.56–57.

## ARGUMENT

## I. These Actions Are Removable Under The Federal-Officer-Removal Statute.

Congress empowered federal courts to hear any claim "for or relating to any act" taken under a federal officer's direction. 28 U.S.C. § 1442(a)(1). Here, Plaintiffs seek to recover damages based on the alleged physical effects of Defendants' extraction, production, promotion, and sale of oil and gas, substantial portions of which were performed under the direction, supervision, and control of federal officers. *See* OB.18–24. On the record in these cases—which includes evidence of federally directed activities not before this Court in *County of San Mateo v. Chevron Corp.*, 32 F.4th 733 (9th Cir. 2022) ("*San Mateo III*"), and not addressed by this Court in *City & County of Honolulu v. Sunoco LP*, 39 F.4th 1101 (9th Cir. 2022) ("*Honolulu II*")—removal is proper. Plaintiffs' arguments to the contrary fail.

### A. Defendants' Expanded Evidentiary Record Is Properly Before This Court.

Plaintiffs first contend that this Court may not consider the substantial evidence submitted below of Defendants' production and sale of

highly specialized fuels for the U.S. military and of their involvement under the close direction of the U.S. government during World War II because that evidence was not included in the original notice of removal and is not merely a clarificatory amendment of prior defective allegations. Resp.12–13. But adding facts to develop the jurisdictional allegations pleaded in a notice of removal does not constitute an amendment to the notice. Indeed, the Supreme Court has held that a notice of removal need only contain "'a short and plain statement of the grounds for removal,'" and "[a] statement 'short and plain' need not contain evidentiary submissions." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 84, 87 (2014). Under Plaintiffs' reading, a defendant would have to allege every fact it might later rely on to support federal jurisdiction, in contravention of the rule that the "pleading standard … does not require 'detailed factual allegations.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Moreover, even if viewed as an amendment, this additional evidence is properly before the Court. Defendants submitted this evidence with their opposition to remand, *see* ECF No. 349-1–66, and this Court expressly permits the consideration of evidence submitted in the "opposition" brief even if not presented in the notice of removal, *Cohn v.*

4

*Petsmart, Inc.*, 281 F.3d 837, 840 n.1 (9th Cir. 2002) (per curiam). The Supreme Court also treats later-filed affidavits as effective amendments to notices of removal. *See Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969) ("[F]or purposes of this review it is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits." (citing 28 U.S.C. § 1653)).

Plaintiffs suggest that Defendants may not amend their notices of removal to add allegations providing further support for their asserted bases of removal. Resp.14. But Plaintiffs misunderstand the rules regarding the amendment of a notice of removal. Although a defendant "may not add completely new grounds for removal," it may amend its allegations to "state the previously articulated grounds more fully" or "more specifically." 14C Wright & Miller, Fed. Prac. & Proc. Juris. § 3733. For this reason, courts allow defendants to amend their notices of removal to present further support for their asserted bases of removal so long as they "do[] not assert a new basis for jurisdiction." *Wang v. Asset Acceptance, LLC*, 680 F. Supp. 2d 1122, 1125 (N.D. Cal. 2010). Thus, defendants may proffer factual allegations not previously submitted to further establish an already-alleged basis for removal. *See Cohn*,

281 F.3d at 840 n.1 (allowing defendant to rely on factual allegations first included in its opposition to remand). Indeed, the Supreme Court has recognized that courts may consider substantive factual allegations contained in "later-filed affidavits" in the federal-officer context. *See Willingham*, 395 U.S. at 407 n.3. These precedents foreclose Plaintiffs' argument.

## B. Defendants Are Not Precluded From Raising Their Federal-Officer-Removal Arguments.

Plaintiffs next argue that the district court abused its discretion in declining to apply offensive nonmutual issue preclusion to prevent Defendants' federal-officer-removal arguments based on this Court's decision in *Honolulu II*. Resp.14–17. But "offensive nonmutual issue preclusion is appropriate only if (1) there was a full and fair opportunity to litigate the identical issue in the prior action," and "(2) the issue was actually litigated in the prior action." *Syverson v. Int'l Bus. Machs. Corp.*, 472 F.3d 1072, 1078 (9th Cir. 2007). Moreover, even when those necessary elements are met, the district court still has "broad discretion" in deciding "whether to apply offensive nonmutual issue preclusion." *Id.* Accordingly, this Court reviews only for abuse of discretion the district court's

6

decision whether to apply offensive nonmutual issue preclusion. *See Dias v. Elique*, 436 F.3d 1125, 1128 (9th Cir. 2006). Here, neither element for offensive nonmutual issue preclusion is met, and the district court in no way abused its broad discretion in rejecting Plaintiffs' preclusion arguments and deciding to reach the merits of Defendants' removal arguments.

As an initial matter, the issues raised in this appeal—whether the activities that Defendants took under the direction of federal officers (in particular the production of specialized fuels and the activities during World War II) relate to Plaintiffs' civil actions—were not decided in *Honolulu II*. Rather, the Court in *Honolulu II* rejected federal-officer removal based on its conclusion that the defendants failed to establish a "colorable federal defense" because they did not cite any cases that involved "failure to warn claims." 39 F.4th at 1110. But that holding is entirely inapplicable here because, unlike *Honolulu II*, this case does not involve any failure-to-warn claims. Plaintiffs have instead brought only a single public-nuisance claim, which they allege was caused by "Defendants' cumulative production of fossil fuels over many years." 5-ER-1077 ¶ 10; 6-ER-

1257 ¶10.  Moreover, the *Honolulu II* Court rejected the defendants' government-contractor defense because they presented only "conclusory statements and general propositions of law," rather than a complete articulation of the defense.  39 F.4th at 1110.  Here, by contrast, Defendants have made a "colorable" case for the government-contractor defense.  *See* OB.43–47.

Given these differences, Plaintiffs cannot demonstrate either that the issues at stake are "identical" between the two cases or that the *Honolulu II* Court necessarily decided the same questions, on the same record, presented to this Court.  *See Stross v. NetEase, Inc.*, 2020 WL 5802419, at *6 (C.D. Cal. Aug. 20, 2020) (finding no "substantial overlap between the evidence and argument advanced in the two cases" where "Defendant offers several new factual allegations").  Defendants are not precluded from pressing the grounds for federal-officer removal at issue here.

And even if issue preclusion were available, Plaintiffs have failed to show that the district court abused its discretion in declining to apply the doctrine.  "[T]he Supreme Court [has] concluded that trial courts

8

should have broad discretion to determine when to apply non-mutual offensive collateral estoppel" because it "presents a unique potential for unfairness" and "does not promote judicial economy in the same manner as defensive use does." *Jean Alexander Cosms., Inc. v. L'Oreal USA, Inc*., 458 F.3d 244, 248–49 (3d Cir. 2006) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329–31 (1979)).

This case involves particularly inappropriate circumstances for applying issue preclusion for several reasons. First, the issue for which Plaintiffs seek preclusion is "one of law," and "treating [the issue] as conclusively determined would inappropriately foreclose opportunities for obtaining reconsideration of the legal rule upon which it was based." *Pharm. Care Mgmt. Ass'n v. District of Columbia*, 522 F.3d 443, 446–47 (D.C. Cir. 2008). To hold otherwise "would prevent the court from performing its function of developing the law." *Id.* at 447; *see also Montana v. United States*, 440 U.S. 147, 162 (1979); Restatement (Second) of Judgments § 29, cmt. i. The district court's decision on federal-officer removal was one of law because it concerned the "scope of the applicable legal rule" governing the federal-officer-removal statute, and therefore issue

preclusion does not apply here. Restatement (Second) of Judgments § 28, cmt. b.

Second, issue preclusion is particularly inappropriate in the removal context because federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821). This Court thus has "a continuing, independent obligation to determine whether subject matter jurisdiction exists." *Mashiri v. Dep't of Educ.*, 724 F.3d 1028, 1031 (9th Cir. 2013).

Third, the significant issues of national and global concern—including national security and foreign relations—implicated in these cases weigh against the discretionary application of nonmutual issue preclusion. Given the limited "judicial economy" and risk of "unfair[ness]" in applying this doctrine, the district court was amply justified in reaching the merits in this case. *Parklane*, 439 U.S. at 329–31. By contrast, Plaintiffs have given no reason for this Court to second-guess the district court's decision not to apply offensive non-mutual issue preclusion. *Cf.* Resp.14–17.

10

Plaintiffs also suggest that Defendants' federal-officer-removal arguments are precluded by *San Mateo II* and similar decisions by the First and Fourth Circuits. *See* Resp.16 n.6. This argument is equally unavailing. As this Court has made clear, "issue preclusion[] prevents parties from relitigating an issue of fact or law if the *same issue* was determined in prior litigation." *Resol. Tr. Corp. v. Keating*, 186 F.3d 1110, 1114 (9th Cir. 1999) (emphasis added). Here, there is not a substantial overlap of issues because, as explained above, both Plaintiffs' single-cause-of-action complaints and Defendants' record supporting federal-officer removal here are materially different from those in the prior cases. *See Stross*, 2020 WL 5802419, at *6.

Tellingly, none of the decisions Plaintiffs cite—nor any of the nearly two dozen other climate change cases pending across the country—resolved a question of jurisdiction on issue-preclusion grounds. This is unsurprising: Applying Plaintiffs' approach would prohibit every court in the country from exercising jurisdiction whenever an earlier decision has granted a motion to remand—or, conversely, prohibiting every court in the country from declining to exercise jurisdiction whenever an earlier decision has denied a motion to remand. That is especially imprudent

11

where, as here, in light of the numerous cases being simultaneously litigated across the country, "the legal landscape is shifting beneath [the parties'] feet." *City of Annapolis v. BP P.L.C.*, 2021 WL 2000469, at \*4 (D. Md. May 19, 2021). Plaintiffs' preclusion arguments are legally and logically unsound and must fail.

## C. Defendants Acted Under The Direction Of Federal Officers.

Plaintiffs contend that Defendants were not "acting under" federal officers when they extracted and produced vast quantities of fossil fuels over many decades, arguing that Defendants were merely engaging in arm's-length consumer contracts or regulator-regulated relationships. Resp.19–27. In each instance, Plaintiffs fail to engage—or outright ignore—key allegations in the notice of removal and record evidence showing that Defendants' operations were under federal officers' "guidance," "direction," and "supervision," and that Defendants assisted the government in producing "item[s] that it needs"—tasks that, without Defendants, "the Government itself would have had to perform." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 151–54 (2007). Indeed, "numerous courts" of appeals have found the "acting under" requirement satisfied

12

where, as here, "a plaintiff's allegations are directed at a private entity's actions undertaken while executing a contractual duty to produce an item for the federal government." *Broussard v. Huntington Ingalls, Inc.*, 2020 WL 2744583, at *5 (E.D. La. May 27, 2020) (collecting cases).

The U.S. government has long treated oil and gas (including highly specialized, government fuels) as essential to military needs, national security, and economic prosperity. *See* 4-ER-783–84. Correspondingly, it has treated Defendants as "in the employ" of the federal government as they extract, produce, and supply oil and gas from specific sources, at specific volumes, and to exacting specifications—all under the direction of federal officers. FER-8.

*First*, Defendants have manufactured and supplied significant amounts of specialized fuels for the military for decades. OB.18–24. Plaintiffs argue that this arrangement was nothing more than arm's-length business activity, Resp.20, but the record shows that Defendants "*manufactured for the government*" non-commercial, military-grade fuels. *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 255 (4th Cir. 2017); *see also Watson*, 551 U.S. at 154 ("providing the Government with a product that it used to help conduct a war" supports removal). Plaintiffs also suggest

13

that this activity does not involve the requisite level of government control and supervision. Resp.21–23. They are mistaken. Federal-officer removal is appropriate whenever—as here—the government "require[s]" a defendant to manufacture contracted products "according to detailed [federal] specifications." *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 947 (7th Cir. 2020). A federal officer need not physically supervise the production; setting detailed, bespoke specifications as part of a government-contractor relationship is more than sufficient. *See id.* at 946 ("The government contractor defense … applies" where "the federal government approved reasonably precise specifications.").

That is exactly what happened here. For decades, Defendants produced and supplied large quantities of highly specialized, non-commercial-grade fuels to satisfy the unique and precise operational requirements of U.S. military planes, ships, and other vehicles. 4-ER-783–84.

Plaintiffs suggest that these programs do not involve sufficient government oversight because "[t]he government left day-to-day operations and management to the companies." Resp.21. But Plaintiffs ignore evidence of the government's "technical direction," 2-ER-233, and control

14

through "security instructions issued to the Contractor by the Contracting Officer," 2-ER-224. Moreover, contrary to Plaintiffs' suggestion, the government's "method of managing" programs to avoid "costly delays," 2-ER-218, does not mean a contractor is any less "[s]ubordinate or subservient to" the federal government when it "fulfilled the terms of a contractual agreement by providing the Government with" specialized fuel to advance federal objectives, *Watson*, 551 U.S. at 151, 153–54. The government can rely on contractors' expertise or specialized experience, and federal-officer removal is permissible if the contractors' work is "connected to the federal government's 'subjection, guidance, or control.'" *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 728 (9th Cir. 2015).

In addition to the foregoing highly specialized programs, Defendants have introduced unrebutted record evidence demonstrating that Defendants and their predecessors continue to produce non-commercial military fuels, fulfilling exacting specifications, up to the present day. Defendants created custom products containing special additives, such as fuel system icing inhibitor ("FSII"), corrosion inhibitor/lubricity improver ("CI/LI"), and lubricity improver additive ("LIA"). 3-ER-448–54. These additives are essential to support the high

15

performance of military engines. FSII is required to prevent freezing caused by the fuels' natural water content when military jets operate at ultra-high altitudes, potentially leading to engine flameout, while CI/LI and LIA are used to avoid engine seizures and to ensure fuel handling system integrity when military fuels are stored for long periods, as on aircraft carriers. *See* 3-ER-471–561. DOD specifications also contain other detailed chemical and physical requirements for these specialized fuels, such as enumerated ranges for conductivity, heat of combustion, and thermal stability, all of which are essential and unique to performance of the military function. 3-ER-455–70, -562–604; 4-ER-606–49; FER-26–142.

Absent Defendants' production of these specialized fuels, "the Government itself would have had to" produce them, thus confirming that removal was proper. *Watson*, 551 U.S. at 154; *see also* OB.21–24.

*Second*, during World War II, predecessors or affiliates of Defendants acted under the direction of federal officers to assist the war effort. OB.27–33. Plaintiffs contend that none of these efforts "show that the government directly controlled or supervised how [Defendants] produced

16

their fossil-fuel products" to satisfy the "acting under" requirement. Resp.24–27. But the record evidence belies this assertion.

For example, as part of the war effort, the federal government entered into contracts with Defendants' affiliates or predecessors to obtain "vast quantities of avgas," which "was essential to the United States' war effort." *Shell Oil Co. v. United States*, 751 F.3d 1282, 1285–86 (Fed. Cir. 2014). The contracts "required" "best efforts" "to expand avgas production facilities" "as quickly as possible." *Id.* at 1286 n.3. And the "Government directed the Oil Companies to 'undertake extraordinary modes of operation which were often uneconomical and unanticipated,'" including "to purchase raw materials outside their normal supply chain to achieve maximum avgas production." *Id.* at 1287.

Plaintiffs argue that these wartime arrangements were "mutually beneficial, cooperative relationship[s]" arising out of "arm's-length" business negotiations. Resp.25. But Section 1442(a) contains no requirement that the relationship with the federal officer be contentious, or that contractors operate out of charity or under duress, rather than for profit.

Plaintiffs also argue that Defendants' work building and operating two vital pipelines does not constitute action under the guidance of federal officers because it is unclear "that the federal government controlled *how* those pipelines were built," and the record suggests that the government relied on the oil companies' expertise to construct those pipelines. Resp.24–25. But "delegation" and "principal/agent arrangement[s]" are quintessential relationships permitting federal-officer removal. *Watson*, 551 U.S. at 156.

Here, the record is full of references to Defendants and their predecessors working as "agents" and "in the employ" of the federal government. *See* FER-8; -146–50. And with respect to the two pipelines, the government "delegat[ed] operating function" to Defendants, which operated as the government's "agent[s] to manage, operate and maintain the pipe lines." *Schmitt v. War Emergency Pipelines, Inc.*, 72 F. Supp. 156, 158 (E.D. Ark. 1947), *aff'd*, 175 F.2d 335 (8th Cir. 1949). While the government paid for and owned both pipelines, industry served as an agent and contractor to fulfill government purposes in supplying oil. *See* OB.31–33.

18

Similarly, Plaintiffs dismiss Professor Wilson's analysis of government-owned industrial plants during World War II as containing "no details" about the level of government direction within those facilities. Resp.24. This argument simply ignores Professor Wilson's description of the government-directed mobilization of oil-and-gas companies during World War II "to alter their normal operations to maximize output of products Allied military forces needed," including specialized aviation gasoline and "fuel oils and diesel fuels for naval warships (such as Navy Special fuel oil and 7-0-2 Navy Diesel)." 4-ER-796–805. As part of this process, the U.S. government issued a series of 80 recommendations and directives that, among other things, "restricted the use of certain petroleum products for high-priority war programs," "dictated the blends of products," and directed the construction and "use of individual pipelines." 4-ER-793. During certain wartime labor-management disputes, the government took "total control" of the facilities, becoming the "nominal operator of five synthetic rubber and aviation gasoline facilities" by war's end. 4-ER-808.

Plaintiffs contend that Defendants' wartime relationships with the government evince "mere 'compliance with the law' and 'acquiescence to

… order[s]' that do not satisfy" federal-officer removal. Resp.27 (quoting *San Mateo III*, 32 F.4th at 757). But the U.S. government at some point directly controlled almost every aspect of the production process, from specifying "the blends of products" in military fuels, 4-ER-793, to converting oil companies to "government-designated operators of government-owned industrial facilities," 4-ER-802. Absent these firms, "the Government itself would have had to [produce]" this vital fuel, indicating that federal-officer removal is proper here. *Watson*, 551 U.S. at 154.

### D. Defendants' Federal Activities "Relate To" Plaintiffs' Lawsuits.

Plaintiffs next argue that Defendants' actions under the direction of federal officers do not "relat[e] to" Plaintiffs' lawsuits, arguing that these activities predate Defendants' alleged "wrongful promotion" of their oil-and-gas products and that the federal government had no part in directing the alleged "wrongful promotion" and "deception." Resp.28. Both of these arguments obfuscate the nature of Plaintiffs' claims.

To start, although Defendants' alleged "wrongful promotion" and "deception" postdate World War II, the source of Plaintiffs' alleged

harm—emissions arising from the ordinary use of Defendants' extraction, production, and sale of oil-and-gas products—extends back decades, including to Defendants' production and sale of fuels to the U.S. government during World War II.  Plaintiffs' current framing of their case as solely concerning "climate-deception campaigns," Resp.28–29, ignores their own allegations and causal theory of harm in an attempt to blinker this Court's jurisdictional analysis.

The federal-officer-removal statute provides for removal of suits brought against any person acting under a federal officer whenever the "*civil action*"—*i.e.*, the plaintiff's lawsuit as a whole—is "for or relating to any act under color of such office."  28 U.S.C. § 1442(a)(1) (emphasis added).  As Defendants explained in their Opening Brief, the Supreme Court has long analyzed such jurisdictional inquiries by focusing on the acts that allegedly caused the plaintiff's injuries.  *See* OB.14–15.

When assessing the nature of a plaintiff's claims for jurisdictional purposes, the Supreme Court has instructed that courts must "zero[] in on the core of the[] suit," especially the "acts that actually injured" the plaintiff.  *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 35 (2015).

21

"[A]ny other approach would allow plaintiffs to evade" jurisdictional requirements "through artful pleading." *Id.* at 36.

Here, Plaintiffs' complaints rely on a causal theory of Defendants' "cumulative production of fossil fuels" being the "primary source of the greenhouse gas pollution that causes global warming" that purportedly caused Plaintiffs' alleged injuries. 5-ER-1075, -77–78 ¶¶2, 10; 6-ER-1187, -90 ¶¶2, 10. In other words, Plaintiffs allege that they were injured by (and seek damages for) global climate change that they allege results from the cumulative greenhouse gas emissions released into the Earth's atmosphere. And Plaintiffs' complaints thus seek to hold Defendants liable for their exploration, extraction, and production of oil and gas, including their substantial activities at the behest of federal officers, which Plaintiffs allege "will intensify future warming and exacerbate [Plaintiffs'] injuries from sea level rise." 5-ER-1088 ¶54; 6-ER-1202 ¶55. As a result, Plaintiffs' suits necessarily relate to Defendants' production of oil-and-gas products (including the substantial portion produced under federal direction), because that production is an essential element of Plaintiffs' alleged chain of causation that leads to their purported injuries. Indeed, the complaints make clear—and Plaintiffs cannot

22

dispute—that without the production of fossil fuel dating back decades, Plaintiffs would not have suffered their alleged injuries and would have no basis for bringing these lawsuits.

Notably, Plaintiffs nowhere challenge the fact that their alleged injuries necessarily arise from the production and use of oil-and-gas products, not just from Defendants' alleged promotional activities. *See* Resp.27–38. The responses that Plaintiffs do offer are unavailing. They first seek to limit *Sachs* to its facts because it interpreted the words "based upon" in the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605(a)(2). Resp.37. But the term "relating to" is *broader* than the phrase "based upon." *See Saudi Arabia v. Nelson*, 507 U.S. 349, 358 (1993) (the term "based upon" in the FSIA "calls for something more than a mere … relation to"). The reasoning in the FSIA cases thus applies *a fortiori* here.

Moreover, Plaintiffs ignore the key lesson from *Sachs*. There, the Court aimed to prevent plaintiffs from manipulating their complaints in an effort to bypass the rules governing federal jurisdiction. 577 U.S. at 36. Here, too, Plaintiffs are attempting to evade federal-officer jurisdiction by asking the Court to ignore their theory of alleged injury

23

and to focus myopically on only part of their claim.  Courts look to the "asserted injuries alleged in the complaint" to prevent this type of artful pleading.  *France.com, Inc. v. French Republic*, 992 F.3d 248, 253 (4th Cir. 2021).

Plaintiffs selectively quote *Fry v. Napoleon Community Schools* to suggest that the gravamen of a complaint is defined solely by particular alleged illegal conduct that a plaintiff chooses to focus on, not by a plaintiff's asserted injuries.  Resp.38.  But *Fry* uses a holistic approach, instructing that the "substance" of the complaint, rather than "particular labels and terms," is "what matters."  580 U.S. 154, 169 (2017).  And "[t]hat inquiry makes central the plaintiff's own claims."  *Id.*  The crucial question here is whether Plaintiffs could "have brought essentially the same claim" absent Defendants' alleged extraction, production, and sale of oil and gas.  *Id.* at 171.  The answer is clearly no.

By their very terms, Plaintiffs' causes of action, alleged injuries, and requested relief all hinge on allegations that Defendants' extraction and production of fossil fuels led to global climate change, which in turn caused Plaintiffs' alleged physical injuries.  *See* OB.38–39; *see also* 5-ER-1107; 6-ER-1291 (seeking an "abatement fund" from Defendants to be

able to adapt to *all* "global warming impacts"). Indeed, Plaintiffs allege that the "purpose and effect" of these alleged misstatements "has been to help Defendants continue to *produce* fossil fuels and sell their products on a massive scale." 5-ER-1095 ¶63 (emphasis added); 6-ER-1209 ¶64 (same). Even the district court acknowledged that "[t]he complaints emphasize production of fossil fuels as a basis for the theory of liability," and "[i]n each complaint, at least 40 paragraphs address 'production' of fossil fuels by defendants." 1-ER-4–5. And the alleged misstatements matter only insofar as they purportedly *increased* production and sale of fossil fuels, thereby increasing greenhouse gas emissions and thus leading to alleged injuries. Defendants' production and sale of fossil fuels are thus inextricably intertwined with Plaintiffs' claims.

The Second Circuit recognized this point in *City of New York v. Chevron Corp.* Addressing a substantially similar climate-change suit that sought to recover for energy companies' "production, promotion, and sale of fossil fuels," the Second Circuit held that the City of New York could not "focus on" one particular "'moment' in the global warming lifecycle" to "artful[ly] plead[]" its case. 993 F.3d 81, 88, 91, 97 (2d Cir. 2021). The Second Circuit emphasized that the City's complaint identified

greenhouse gas emissions as "the singular source of [its] harm," and, under the City's causal theory, "[i]t is precisely *because* fossil fuels emit greenhouse gases—which collectively 'exacerbate global warming'—that the City is seeking damages." *Id*. at 91. The Third Circuit, too, in examining similar climate claims, recognized that, although the plaintiffs "try to cast their suits as just about misrepresentations[,] … their own complaints belie that suggestion. They charge the oil companies with not just misrepresentations, but also trespasses and nuisances. Those are caused by burning fossil fuels and emitting carbon dioxide." *City of Hoboken v. Chevron Corp*., 45 F.4th 699, 712 (3d Cir. 2022). Just so here.

Plaintiffs protest that federal-officer removal is improper because no federal officer "directed or even influenced" Defendants' alleged "wrongful promotion and concealment of the climatic hazards of fossil fuels." Resp.28. But the federal government need not direct the challenged conduct for a defendant to remove a case that seeks damages for activities executed under federal contracts. Indeed, this argument ignores that the federal-officer-removal inquiry considers the source of injury as a central element in identifying the core of a plaintiff's claim. *See supra*, 23–25. Plaintiffs' exclusive focus on Defendants' alleged "wrongful

promotion," which is only one component of their California public-nuisance claims, impermissibly adopts the very "one-element test" that the Supreme Court explicitly rejected in *Sachs*. 577 U.S. at 34. Likewise, Plaintiffs' argument ignores their own allegations. *See*, *e.g.*, 5-ER-1105 ¶95 ("Defendants' *production* and promotion of massive quantities of fossil fuels … has caused, created, assisted in the creation of, contributed to, and/or maintained … global warming-induced sea level rise, a public nuisance in Oakland." (emphasis added)); 6-ER-1222–23 ¶96 (same).

In their response brief, for the first time, Plaintiffs assert that they do not seek "unlimited damages" for the effects of climate change; instead, their "recovery will necessarily be tied to those harms attributable to Defendants' concealment and deceptive promotion." Resp.34. This Court permits parties to make judicial admissions in their appellate briefs and will hold them to their concession where the party "tried to benefit from the admission." *Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 557 (9th Cir. 2003). Here, Plaintiffs are attempting to benefit from their concession about the scope of their requested relief and should accordingly be bound. *Id.* But, even if Plaintiffs' claims are cab-

ined to those more limited damages, their causal theory of harm still necessarily relies upon Defendants' "cumulative production of fossil fuels" as the "primary source of the greenhouse gas pollution that causes global warming" and that purportedly caused Plaintiffs' alleged injuries. 5-ER-1075, -77–78 ¶¶2, 10; 6-ER-1187, -90 ¶¶2, 10.

In other words, the only way that the alleged misrepresentations contribute to Plaintiffs' alleged injuries is if those misrepresentations increased production, sale, and thus consumption of fossil fuels, thereby increasing emissions and adding to the emissions already accumulated in the atmosphere over decades. So, even under this admission, the claims still necessarily depend on production dating back to before any alleged misrepresentations began. And there is no allegation that any incremental emissions uniquely attributable to the alleged misrepresentations (if such exist) could have alone caused climate change, and thus, Plaintiffs' alleged injuries. Plaintiffs' cabining of the scope of relief therefore changes neither the necessary mechanism of their alleged injuries nor the nature of their suit, which encompasses emissions from activities undertaken at the direction of federal officers. *See* OB.36–38.

28

Finally, even if there were some doubt as to the contours of Plaintiffs' claims, the law is clear that where both parties "have reasonable theories of th[e] case," the court's "role at this stage of the litigation is to credit only the [defendants]' theory." *Baker*, 962 F.3d at 941, 947; *see also Leite v. Crane Co.*, 749 F.3d 1117, 1124 (9th Cir. 2014) ("In assessing whether a causal nexus exists, [courts] credit the defendant's theory of the case."). Defendants' theory of the case as focusing on the production of fossil fuels is at the very least reasonable and, accordingly, must be given effect at this stage of litigation.

## E.    Defendants Have Raised "Colorable Federal Defenses."

Finally, Defendants have raised a colorable government-contractor defense. *See* OB.41–47.[2] Plaintiffs contend that Defendants "waived" the opportunity to establish this defense because their most full-throated articulation came in the Opening Brief. Resp.39–40. But Defendants properly raised this defense in their notices of removal, 5-ER-1060, -1158, and Plaintiffs' forfeiture argument relies on just the sort of "'narrow,

---

[2] Defendants respectfully preserve their argument that the *Honolulu II* Court erred in rejecting Defendants' other federal defenses. *See* OB.41 n.12.

grudging interpretation' of the [removal] statute" that the Supreme Court has warned against. *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999).

To establish a government-contractor defense, a defendant must demonstrate that "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about [any] dangers in the use of the equipment that were known to the supplier but not to the United States." *Cabalce*, 797 F.3d at 731. Defendants submitted evidence colorably establishing each prong. *First*, Defendants submitted evidence showing that Defendants have produced for decades—and continue to produce—military-grade fuels based on exacting specifications from the U.S. government. *See* OB.18–24; 2-ER-58–59. *Second*, Defendants submitted evidence showing that they followed these exacting specifications, producing highly specialized, noncommercial fuel for the military that conforms to the government's exacting specifications. *See* OB.18–24; 2-ER-58–59. *Third*, Defendants cited extensive public-record evidence demonstrating that the U.S. government has been aware of the risks of using oil and gas for decades but has continued to order substantial

amounts of fuel from Defendants. OB.44–46. Indeed, "the federal government has long promoted fossil fuel use despite knowing that it can cause catastrophic climate change." *Juliana v. United States*, 947 F.3d 1159, 1164 (9th Cir. 2020). And Plaintiffs' own complaints noted that the scientific community has been aware of the climatic effects of greenhouse gas emissions since the late nineteenth century and that the National Academy of Sciences, "which is charged with providing independent, objective scientific advice to the United States government," has been issuing warnings since 1979. 5-ER-1084.

Defendants may not have gathered all of these factual allegations into consecutive paragraphs in their notices of removal, but they more than sufficiently laid the foundation to establish a colorable federal defense, which is all that is required. Under this Court's precedent, Defendants need only assert a claim that "is not 'wholly insubstantial, immaterial, or frivolous.'" *McBride Cotton & Cattle Corp. v. Veneman*, 290 F.3d 973, 981 (9th Cir. 2002).

Plaintiffs also argue that Defendants failed to demonstrate that their government-contractor defense applies "to claims grounded in a manufacturer's wrongful promotion of a hazardous product." Resp.41.

31

They contend that Defendants have been able to establish, at most, that their defense applies to "*design-defect* claims." *Id.* But this argument mischaracterizes Plaintiffs' complaints and fails on its own terms.

First, Plaintiffs have brought only a single cause of action—public nuisance, which they allege was caused by "Defendants' cumulative production of fossil fuels over many years," 5-ER-1077 ¶10; 6-ER-1257 ¶10. Although they include allegations of "wrongful promotion," their allegations are not premised solely on such promotion, but also production. Thus, their claims are akin to design-defect claims. *See* 5-ER-1105 ¶95 ("Defendants' *production and promotion* of massive quantities of fossil fuels … has caused … global warming-induced sea level rise, a public nuisance" (emphasis added)). As noted above, *supra* 26–28, Plaintiffs cannot now selectively ignore their allegations concerning production and convert their public-nuisance claims into consumer-protection claims.

Second, even if Plaintiffs had asserted claims that consisted solely of wrongful-promotion allegations, Defendants still would not have been required to cite an authority that precisely mirrored Plaintiffs' unusual allegations to establish a "colorable federal defense" for removal purposes. Defendants must simply assert the federal defense and point

32

to "*facts*" which, if proven, would "establish[] a *prima facie* defense." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 814–15 (3d Cir. 2016) (emphasis added).

Moreover, Defendants *did* cite two cases establishing that the government-contractor defense can apply to public-nuisance claims—the only claims Plaintiffs bring here. *See* OB.42–43 (citing *Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharm., Inc.*, 996 F.3d 243, 254–56 (4th Cir. 2021) (applying government contractor defense to nuisance claim); *In re Nat'l Prescription Opiate Litig.*, 2023 WL 166006, at *7 (N.D. Ohio Jan. 12, 2023) (same)). Defendants have more than carried their burden to raise a colorable federal defense.

## II. Plaintiffs' Claims Necessarily Raise Disputed And Substantial Issues Under The First Amendment And, Accordingly, Are Removable Under *Grable*.

Even if Plaintiffs' claims were somehow limited to Defendants' alleged "misrepresentations," removal would still be proper under *Grable*. Plaintiffs' speech-related claims necessarily include affirmative federal-law elements required by the First Amendment because those constitutional requirements are "essential" elements of Plaintiffs' case. *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936).

33

Once again, Plaintiffs erroneously argue that Defendants have forfeited this argument and that the Court cannot consider it under the law-of-the-case doctrine. Resp.43–45. Plaintiffs are doubly wrong.

While this Court previously rejected *Grable* jurisdiction on certain grounds, it did *not* address jurisdiction premised on the First Amendment. And this argument is properly before the Court now because Defendants raised *Grable* in their notice of removal. *See Yee v. City of Escondido*, 503 U.S. 519, 534–35 (1992) ("Once a federal claim is properly presented, a party can make any argument in support of that claim."). While Defendants did not assert this basis for *Grable* jurisdiction in the original remand proceedings, that is only because Plaintiffs' theory of the case at that time primarily rested on Defendants' production and sale of fossil fuels. *See* OB.37–38 & n.11. Before the district court, Plaintiffs themselves described the "primary conduct" giving rise to their case as "the production of fossil fuels," categorizing "the misleading promotional stuff" as merely a "plus factor[]." 4-ER-879. Given Plaintiffs' own framing of their claims, Defendants had no reason to raise the First Amendment basis for *Grable* jurisdiction. *See Yniguez v. Arizona*, 975 F.2d 646, 647 n.2 (9th Cir. 1992) (per curiam) (permitting a plaintiff to raise a new

issue in a subsequent appeal because she "had no reason" to press it until after the first appeal).

To the extent this Court credits Plaintiffs' current attempt to limit the theory to be based *solely* on promotion, Defendants cannot be denied a full and fair opportunity to respond to that theory. Indeed, the district court recognized that this Court's previous decision in this case changed the "crux" of the theory of the case. *See* 1-ER-10 ("If promotion is *now* to be the crux of the public nuisance claim, then it will by definition involve commercial speech … and involve petition for redress of grievance … , both protected by the First Amendment." (emphasis added)).

On the merits, Plaintiffs object that the cases Defendants cite did not all involve removal, Resp.49–50, but that argument misses the point. The posture of those cases is irrelevant. What is relevant is that Plaintiffs' claims provide a basis for *Grable* removal because "a court will have to construe the United States Constitution" to decide Plaintiffs' claims, which implicate broader federal interests involving matters of national and international concern. *Ortiz v. Univ. of Med. & Dentistry of N.J.*, 2009 WL 737046, at *3 (D.N.J. Mar. 18, 2009).

Plaintiffs also argue that none of the cases Defendants cite is entirely analogous to the present case, Resp.50–51, but that is not the relevant question. The question is whether the elements for removal under *Grable* have been established. On this question, Plaintiffs do not even attempt to challenge whether the issues raised are "actually disputed." Rather, they dispute only whether a federal issue is "necessarily raised," "substantial," and "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Resp.46–52.

With respect to whether a federal issue is "necessarily raised," *Gunn v. Minton*, 568 U.S. 251, 258 (2013), Plaintiffs suggest that the relevant First Amendment issues are "[federal constitutional] defenses" rather than aspects of their claims, Resp.46–48. But the First Amendment grafts affirmative federal-law *elements—not* defenses—onto common-law speech-related torts. The First Amendment imposes "a constitutional requirement" onto these torts under which Plaintiffs must "bear the burden of showing falsity, as well as fault, before recovering damages." *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986).

Plaintiffs protest that removal based upon such federal-law elements would mean that "state-law complaints would be removable under

36

Section 1441(a) whenever a defendant might assert a First Amendment defense." Resp.48. Not so. Unlike the vast majority of state tort cases involving speech, these cases involve attempts by governmental entities to punish speech on matters of public concern, which implicates the very core of the First Amendment's protections. First Amendment interests are at their apex where, as here, a governmental entity seeks to use state law to punish speech on issues of "public concern." *Hepps*, 475 U.S. at 774–75. Certainly, these issues are "substantial."

Plaintiffs argue that this Court "has already determined" that their public-nuisance claims do not raise a "'substantial question'" of federal law. Resp.49 (quoting *City of Oakland v. BP PLC*, 969 F.3d 895, 906–07 (9th Cir. 2020)). But Plaintiffs misconstrue this Court's earlier ruling. In *Oakland*, the Court concluded that the issues of federal common law raised by Defendants did not provide a basis for *Grable* removal because "the Supreme Court has not yet determined that there is a federal common law of public nuisance relating to interstate pollution." 969 F.3d at 906. The Court also held that certain federal interests implicated by these lawsuits, including energy policy, national security, and foreign

37

policy, did not raise the type of "substantial question of federal law" necessary for *Grable* removal, and that resolution of Plaintiffs' actual nuisance claims would be too fact-bound to raise a clean issue of federal law. *Id.* at 906–07. None of these concerns applies to the First Amendment issues presented here, which turn on the clean constitutional question whether Plaintiffs' claims based on Defendants' alleged deception and misrepresentations necessarily raise federal-law elements under the First Amendment.[3]

## CONCLUSION

The Court should reverse the district court's remand order.

---

[3] Plaintiffs correctly concede that this Court's decisions on which the district court relied to reject Defendants' *Grable* argument are inapt because none of them considered the role that the First Amendment plays in the *Grable* analysis. Resp.52.

38

DATED:  June 26, 2023                    Respectfully submitted,

By:   /s/ *Dawn Sestito*                 By: ** /s/ *Theodore J. Boutrous, Jr.*
M. Randall Oppenheimer                   Theodore J. Boutrous, Jr.
Dawn Sestito                             William E. Thomson
O'MELVENY & MYERS LLP                    GIBSON, DUNN & CRUTCHER LLP
400 South Hope Street                    333 South Grand Avenue
Los Angeles, California 90071-2899       Los Angeles, CA 90071
Telephone: (213) 430-6000                Telephone: (213) 229-7000
Facsimile: (213) 430-6407                Facsimile: (213) 229-7520
roppenheimer@omm.com                     tboutrous@gibsondunn.com
dsestito@omm.com                         wthomson@gibsondunn.com

                                         Thomas G. Hungar
Theodore V. Wells, Jr.                    GIBSON, DUNN & CRUTCHER LLP
Daniel J. Toal                           1050 Connecticut Avenue, N.W.
PAUL, WEISS, RIFKIND, WHARTON             Washington, DC 20036-5306
& GARRISON LLP                           Telephone: (202) 955-8500
1285 Avenue of the Americas              thungar@gibsondunn.com
New York, New York 10019-6064
Telephone: (212) 373-3000                Andrea E. Neuman
Facsimile: (212) 757-3990                GIBSON, DUNN & CRUTCHER LLP
twells@paulweiss.com                     200 Park Avenue
dtoal@paulweiss.com                      New York, NY 10166
                                         Telephone: (212) 351-4000
                                         aneuman@gibsondunn.com
*Attorneys for Defendant-Appellant*
*EXXON MOBIL CORPORATION*                Joshua D. Dick
                                         GIBSON, DUNN & CRUTCHER LLP
                                         555 Mission Street, Suite 3000
                                         San Francisco, CA 94105-0921
                                         Telephone: (415) 393-8200
                                         jdick@gibsondunn.com

By: /s/ *Gary T. Lafayette*
Gary T. Lafayette
LAFAYETTE KUMAGAI LLP
1300 Clay Street, Suite 810
Oakland, California 94612
Telephone: (415) 357-3600
Facsimile: (415) 357-4605
glafayette@lkclaw.com

David C. Frederick
Daniel S. Severson
KELLOGG, HANSEN, TODD, FIGEL &
FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
Facsimile: (202) 326-7999
dfrederick@kellogghansen.com
dseverson@kellogghansen.com

*Attorneys for Defendant-Appellant*
*SHELL PLC (F/K/A ROYAL*
*DUTCH SHELL PLC)*

Neal S. Manne
Johnny W. Carter
Erica Harris
Steven Shepard
SUSMAN GODFREY LLP
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
nmanne@susmangodfrey.com
jcarter@susmangodfrey.com
eharris@susmangodfrey.com
sshepard@susmangodfrey.com

Herbert J. Stern
Joel M. Silverstein
STERN & KILCULLEN, LLC
325 Columbia Turnpike, Suite 110
Florham Park, NJ 07932-0992
Telephone: (973) 535-1900
Facsimile: (973) 535-9664
hstern@sgklaw.com
jsilverstein@sgklaw.com

*Attorneys for Defendant-Appellant*
*CHEVRON CORPORATION.*

** Pursuant to Ninth Circuit L.R. 25-5(e), counsel attests that all other parties on whose behalf the filing is submitted concur in the filing's contents.

By: __/s/ *Raymond A. Cardozo*__
Raymond A. Cardozo
T. Connor O'Carroll
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Telephone: (415) 543-8700
Facsimile: (415) 391-8269
rcardozo@reedsmith.com
cocarroll@reedsmith.com

Jameson R. Jones
Daniel R. Brody
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100
Facsimile: (303) 592-3140
jameson.jones@bartlitbeck.com
dan.brody@bartlitbeck.com

*Attorneys for Defendants-Appellants*
*CONOCOPHILLIPS COMPANY and*
*CONOCOPHILLIPS*

By: __/s/ *Jonathan W. Hughes*__
Jonathan W. Hughes
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th
Floor
San Francisco, California 94111-4024
Telephone: (415) 471-3100
Facsimile: (415) 471-3400
jonathan.hughes@arnoldporter.com

John D. Lombardo
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, California 90017-5844
Telephone: (213) 243-4000
Facsimile: (213) 243-4199
john.lombardo@arnoldporter.com

Nancy Milburn
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8383
Facsimile: (212) 715-1399
nancy.milburn@arnoldporter.com

*Attorneys for Defendant-Appellant BP*
*P.L.C.*

41

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(g), I certify that:

This brief complies with the length limits permitted by Ninth Circuit Rules 32-1(a) and 32-2(b). This brief contains 7,000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), and is filed by separately represented parties.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word 2016, New Century Schoolbook 14-point font.

Dated: June 26, 2023

*/s/ Theodore J. Boutrous, Jr.*
Theodore J. Boutrous, Jr.

GIBSON, DUNN & CRUTCHER LLP

*Attorney for Defendant-Appellant Chevron Corporation*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 26, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: June 26, 2023       /s/ *Theodore J. Boutrous, Jr.*
Theodore J. Boutrous, Jr.

GIBSON, DUNN & CRUTCHER LLP

*Attorney for Defendant-Appellant*
*Chevron Corporation*

43